Timothy M. HAILEY, Appellant,

v.

Cecelia E. HAILEY, Appellee.

No. 01–02–00846–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 26, 2004.

Leta J. Womack, Womack & Womack, Houston, TX, for Appellant.

Jay M. Wright, Conroe, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices KEYES and ALCALA.

## OPINION

ELSA ALCALA, Justice.

Husband, Timothy Hailey, appeals from a judgment awarding Wife, Cecelia Hailey, the greater portion of their community estate in their divorce trial. In his first three issues, Husband contends that the trial court abused its discretion by not dividing the property in a just and right manner, by not manifesting a due regard for Husband's rights, and by not awarding Husband one-half of the community's economic contribution to Wife's separate estate. In his fourth issue, Husband asserts that the trial court's conclusion of law concerning the community estate's claims for reimbursement against his separate estate is erroneous. Husband complains of cumulative error in his fifth issue. We affirm.

## Background

Husband and Wife were married on March 14, 1998 and permanently separated less than two and a half years later, in October 2000. Before their final separation, the couple separated for six weeks during the summer of 1998. No children were born of or supported by the marriage.

Husband and Wife were both in their thirties when they married. At that time, Wife's separate estate consisted primarily of the following: employee stock and an employee profit-sharing plan worth approximately $224,000, equity of approximately $38,000 in a house, and personal property. Husband owned a house with equity of approximately $30,000 at the time of marriage, as well as personal property. They chose to reside in Wife's house and leased Husband's house.

Both Husband and Wife worked during the marriage. But, although Husband worked as an independent contractor in the air-conditioner repair business, he reported a net income of only $700 during the first year of marriage, no income the second year, and a net loss the third year. Wife earned an average salary of $84,000 annually as a comptroller for the company for which she had worked for over 18 years.

Wife filed for divorce on June 13, 2001, and Husband countersued three months later. Neither petition asserted fault. The trial court's judgment separated the community estate by ordering that (1) Wife and Husband each be separately responsible for the attorney's fees they incurred during the divorce proceedings, and that (2) the remainder of the community property be divided as shown below.

### Wife's Award of Community Property

Wife received a value of $112,541 in assets that had been part of the communi-

ty estate, as follows: [1]

| | | |
|---|---|---|
| (1) | Household Furnishings | $ 3,975 |
| (2) | HISCO Employee Stock Ownership Plan [ESOP] | $ 69,546 [2] |
| (3) | Klein Bank account | $ 600 |
| (4) | HISCO Profit-Sharing Plan | $ 10,009 |
| (5) | 2001 Navigator | $ -542 [3] |
| (6) | Community estate's economic contribution claim against Wife's separate estate (community funds used to enhance value of house that Wife owned before marriage) | $ 28,953 |

The community-estate debt that was assigned to Wife totaled $38,902 for the following debts: Foley's for $331, First USA Bank for $14,470, Bank Card Service for $11,529, and Capital One for $12,572. After subtracting the community debt assigned to Wife from the community assets awarded to Wife, Wife's net award totaled $73,639.

### Husband's Award of Community Property

Husband received a value of $58,256 in assets that had been part of the community estate, as follows:

| | | |
|---|---|---|
| (1) | Household furnishings | $ 2,300 |
| (2) | State Farm life insurance policy | $ 5,293 |
| (3) | Washington Mutual bank account | $ 4,256 |
| (4) | Federal Credit Union bank account | $ 108 |
| (5) | 1999 Dodge Ram truck | $ 9,745 [4] |
| (6) | Community estate reimbursement claims against the separate estate of Husband | $ 36,119 |
| (7) | State Farm Individual Retirement Account | $ 435 |

Only two debts that belonged to the community estate, First USA Visa for $6,905 and Chase Platinum Visa for $3000, were awarded to Husband, for a total of $9,905. Thus, the total net award for Husband was $48,351.

The effect of the net distribution of the estate was approximately a 60/40 division of property in favor of Wife. In its conclusion of law number two, the trial court stated that the "division of the property of

[Wife] and [Husband] effected by the final judgment is just and right, having due regard for the rights of each party irrespective of the characterization of any item of property as either community or separate."

### Division of Community Property

In his first issue, Husband contends that the trial court abused its discretion by failing to divide the community estate in a

1. Numbers have been rounded to the nearest dollar for clarity.

2. Husband contends that the correct value of the stocks that Wife received during the marriage is $82,058. Based on Wife's testimony, however, the record supports the trial court's finding of fact and exhibits. Accordingly, we defer to the value assessed in the trial court's findings of fact.

3. The trial court assessed the value of the couple's vehicles based on the equity in the vehicle. The remaining outstanding debt due on the vehicle's loan was assigned to the person who was awarded the vehicle. Wife's outstanding vehicle loan amount was $36,017.

4. The remaining balance on Husband's vehicle's loan was $13,980, and the debt was assigned to Husband.

just and right manner and by awarding an approximate 60/40 division of the community estate to Wife after having previously stated that it would divide the property "close to a 50/50 split." In issue two, Husband complains that the trial court awarded "essentially all" of the community assets to Wife and abused its discretion by failing to manifest a due regard for his rights.

In a decree of divorce, the court shall order a division of the community estate in a manner that the court deems just and right, having due regard for the rights of each party. TEX. FAM.CODE ANN. § 7.001 (Vernon 2004); *Rafferty v. Finstad*, 903 S.W.2d 374, 376 (Tex.App.-Houston [1st Dist.] 1995, writ denied). In effecting a just and right division of the community estate, section 7.001 of the Family Code vests the trial court with broad discretion that will not be reversed on appeal unless the complaining party shows that the trial court clearly abused its discretion. *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex.1981); *Rafferty*, 903 S.W.2d at 377. The test of whether the trial court abused its discretion is whether the court acted arbitrarily or unreasonably, and without reference to any guiding principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985); *Rafferty*, 903 S.W.2d at 376. It is the duty of the appellate court to presume that the trial court properly exercised its discretion in dividing the marital estate. *Murff*, 615 S.W.2d at 699.

A trial court may order an unequal division of the community property when a reasonable basis exists for granting that relief. *Robles v. Robles*, 965 S.W.2d 605, 621 (Tex.App.-Houston [1st Dist.] 1998, pet. denied). The division of property must not be so disproportionate as to be inequitable, and the circumstances must justify awarding more than one-half to one party. *Patt v. Patt*, 689 S.W.2d 505, 507 (Tex.App.-Houston [1st Dist.] 1985, no writ). Relevant factors in the division of the marital estate include (1) the education of the parties, (2) their relative earning capacities, (3) the size of their separate estates, and (4) the nature of the community property.[5] *Murff*, 615 S.W.2d at 699; *Alsenz v. Alsenz*, 101 S.W.3d 648, 655 (Tex. App.-Houston [1st Dist.] 2003, pet. denied).

### Education of the Parties

Husband has more formal education than Wife. He received a degree in agronomy (turf-grass science) from Texas A & M University in 1987 and education in air-conditioning repair as a 1997 graduate from Houston Community College. Wife completed only one year of college following high school. Because Husband's formal education empowers him to obtain gainful employment at wages exceeding Wife's, this factor favors Wife's receiving a greater share of the community property.

### Relative Earning Capacity

Although Wife earned more income than Husband at an average wage of $84,000 annually, the record suggests that Husband's earnings could have exceeded Wife's. Husband could have earned much as $125,000 in the air-conditioning-repair business alone, but Husband also had his own landscaping business and worked part-time in the car-wash business. Wife's salary appears to have peaked, based on her employment for the past 18 years for the same company after working her way

---

5. Other factors, not pertinent to this case, can include the age, health and physical condition of the parties, fault in breaking up the marriage, the benefits the innocent spouse would have derived from continuing the marriage, and the probable need for future support. *Smith v. Smith*, 836 S.W.2d 688, 692–93 (Tex. App.-Houston [1st Dist.] 1992, no writ).

up from receptionist to comptroller. Moreover, Wife testified that she may need to seek a lower position at the company and take a pay cut to reduce work-related stress. Because Husband has the earning capacity to exceed Wife's wages, this factor favors Wife's receiving a greater share of the community estate.

### Size of Separate Estates

Husband and Wife both owned houses prior to marriage, and Wife had slightly more equity in her house when they married.[6] Husband also had more credit-card debt than wife, at $12,600. Because of Wife's employee stock and profit-sharing plan, however, her separate estate greatly outweighs Husband's.[7] Thus, although Husband was capable of earning more money than Wife due to his formal education, Wife had developed a considerably larger separate estate than Husband before marriage. Because Wife's separate estate is more valuable than Husband's, this factor favors Husband's receiving a greater share of the community property.

### Nature of Community Property

As reflected in the trial court's finding of fact number four, the community estate consists primarily of the community interest in Wife's employee stock-ownership plan, valued at $69,546, and the profit-sharing plan valued at $10,009, for a total of $79,555. In addition, the community estate had a total value of $65,072 for the community estate's $28,953 claim for eco-nomic contribution for community funds spent to enhance the value of Wife's house, and the community estate's claim for reimbursement for $36,119 from the separate estate of Husband. The remaining community assets included the 1999 Dodge Ram truck, with an equity valued at $6,745; the State Farm Life Insurance Policy, valued at $5,293; and the Washington Mutual Bank account, valued at $4,256.

Wife contends that she is entitled to a greater share of the community estate because she earned the vast majority of the income brought into the community estate. Husband contends that Wife interfered with his ability to work by imposing a curfew on him that required him to be home by 6:00 p.m. on weekdays and 2:00 p.m. on weekends. Husband also contends that, although his tax records show net losses, he routinely deposited money into the community estate and gave the community estate the benefit of depreciation for some of his property in joint tax returns. Wife denied placing a curfew on Husband and claimed that he was voluntarily underemployed. We conclude that the trial court did not abuse its discretion by impliedly finding that this factor favors Wife's receiving a greater share of the community property.

### Conclusion

Application of the *Murff* factors supports the trial court's having properly exercised its discretion to award Wife a greater share of the community estate in

---

6. Wife's equity in her house appears to be only $38,176. Finding of fact number six shows that Wife's house was valued at $175,076 on the date of marriage, but finding of fact number 10e shows a principal debt of $136,900 on her house on the date of marriage. Husband's equity appears to be approximately $30,000. Finding of fact number seven shows that Husband's house and lot were valued at $57,528. Husband's testimony in the record reflects that he owed $21,310 in mortgage debt at the time of marriage.

7. In finding of fact number six, the trial court found that Wife owned, as her separate property prior to marriage, 2492.45 shares of stock in her employer's stock-ownership plan account. The record shows that the stocks fluctuated in value, but for the year ending October 31, 1998, the value of the stocks totaled $184,713. Additionally, finding of fact number six shows that Wife owned a profit-sharing plan, with a value of $39,493 as her separate property prior to marriage.

dividing the property in a "just and right" manner. *See Murff*, 615 S.W.2d at 699. The record shows that Husband and Wife are in their thirties, that they are physically and mentally able, and that each is capable of earning over $80,000 annually. Although highly educated and capable of earning over $100,000 annually, Husband reported less than $700 in income during the marriage. The couple lived in Wife's house and were supported by Wife's income. Wife's income paid for the benefits to Wife's and Husband's separate estates. Under the circumstances, the division of property was not so disproportionate as to be inequitable, and the circumstances justify awarding more than half of the community estate to Wife. *See Patt*, 689 S.W.2d at 507.

■ In conducting a bench trial of a divorce case, the trial court has the opportunity to observe the parties, determine their credibility, and evaluate their needs and potential, both social and economic. *Murff*, 615 S.W.2d at 700. Similarly, as the trier of fact, the trial court is empowered to apply its understanding and experience; mathematical precision in dividing property in a divorce is usually not possible. *Id.* Given the wide latitude and discretion vested in the trial court, which we may disturb only in a case of clear abuse, *id.*, we cannot conclude, under the circumstances presented here, that the trial court abused its discretion by awarding Wife a greater share of the community estate.

### *"Close to a 50/50 Split"*

■ In support of his first issue, Husband further contends that, because the trial court stated in its closing remarks that, "it works out that it is close to a 50/50 split and I'm going to leave the parties as they sit today," the trial court erred by instead dividing the property closer to a 60/40 division. The trial court's remarks, however, are not reflected in its findings of fact, conclusions of law, or judgment. Accordingly, they are not dispositive. *See In re W.E.R.*, 669 S.W.2d 716, 716 (Tex.1984). Rather, the trial court's conclusions of law and judgment properly refer only to the just and right division of the property mandated by section 7.001 of the Family Code. *See* TEX. FAM.CODE ANN. § 7.001; *Rafferty*, 903 S.W.2d at 376. Accordingly, Husband's contention does not conflict with our conclusion that the trial court did not abuse its discretion by awarding Wife a greater share of the community estate in effecting its just and right distribution of the community estate.

■ We overrule Husband's issue one.[8]

### *"Essentially All"* Community Assets to Wife

■ In his second issue, Husband complains that Wife was awarded "essentially

8. We have construed Husband's broadly phrased issue as arguably encompassing, in addition, a challenge to the trial court's decision to require each party to pay the attorney's fees that each incurred during the divorce proceedings. Accordingly, we note that the debt for Wife's attorney's fees was $16,933 according to the trial court's finding of fact number eight, but that no findings of fact establish Husband's attorney's fees. Before the close of the evidence, Husband had established only that his attorney's fees amounted to $1,078. At the close of evidence, however, Husband's attorney was permitted to testify, over Wife's objections, that his attorney's fees were $21,935. As we explain further in this opinion, we may infer missing findings in support of the trial court's rulings under the circumstances of this case. *See* TEX.R. CIV. P. 299; *Vickery v. Comm'n for Lawyer Discipline*, 5 S.W.3d 241, 251–53 (Tex. App.-Houston [14th Dist.] 1999, pet. denied). Given the trial court's implied finding that Husband incurred $21,935 in attorney's fees and the discretion vested in the trial court to effect a just and right division, we cannot say that the trial court exceeded its statutory discretion by requiring that Husband and Wife each be responsible for attorney's fees that each incurred during the divorce proceedings.

all" of the community assets. Husband ignores that the community estate's considerable debt was also assigned to Wife. Although she received most of the community assets, Wife also received most of the community debt. Accordingly, we reject Husband's contention that Wife received "essentially all" of the community assets and affirm our conclusion that the trial court did not abuse its discretion in its just and right distribution of the community estate.

We overrule Husband's issue two.

## Reimbursement Award Against Husband's Estate

The reimbursement award stems from a claim by the community estate for compensation for community funds spent during the marriage on the house that Husband owned before the marriage. In conclusions of law number four and five, the trial court assessed a value of $36,119 for the reimbursement claim made by the community estate. The community estate's entire reimbursement award, valued at $36,119, was awarded to Husband as his sole property.

Husband challenges the assessed value of $36,119 for the reimbursement claim in issue four. Specifically, Husband claims that the record does not support the trial court's conclusions of law regarding the community estate's claims for reimbursement against his separate estate, and contends that the reimbursement award should be set aside.

 The trial court entered findings of fact and conclusions of law in response to Husband's request. Husband did not offer proposed findings, and did not propose additional or amended findings after the trial court adopted the findings proposed by Wife. See Tex.R. Civ. P. 298, 299. In an appeal from a bench trial, we review a trial court's conclusions of law

as legal questions, de novo, and will uphold them on appeal if the judgment can be sustained on any legal theory supported by the evidence. *BMC Software Belgium v. Marchand*, 83 S.W.3d 789, 794 (Tex.2002); *In re Moers*, 104 S.W.3d 609, 611 (Tex. App.-Houston [1st Dist.] 2003, no pet.). An appellant may not challenge a trial court's conclusions of law for factual sufficiency, but we may review the legal conclusions drawn from the facts to determine their correctness. *BMC Software Belgium*, 83 S.W.3d at 794. If we determine that a conclusion of law is erroneous, but that the trial court nevertheless rendered the proper judgment, the error does not require reversal. *Id.*

 When, as here, the appellate record contains a complete reporter's record, we review the trial court's findings of fact under the same standards for legal and factual sufficiency that govern review of jury findings. *See Min v. Avila*, 991 S.W.2d 495, 500 (Tex.App.-Houston [1st Dist.] 1999, no pet.). The trial court acts as factfinder and is the sole judge of the credibility of witnesses in a bench trial. *See Murff*, 615 S.W.2d at 700; *Southwestern Bell Media, Inc. v. Lyles*, 825 S.W.2d 488, 493 (Tex.App.-Houston [1st Dist.] 1992, writ denied). Accordingly, the trial court may consider all the facts and circumstances in connection with the testimony of each witness and accept or reject all or part of that testimony. An appellate court may not substitute its judgment for the trial court's assessment of witnesses' testimony in a bench trial. *See In re W.E.R.*, 669 S.W.2d at 717.

 When the trial court's findings of fact address a ground of recovery or defense, but inadvertently omit an essential element, we may infer the omitted element, pursuant to rule 299 of the Rules of Civil Procedure, because the judgment

is presumed valid. *See* TEX.R. CIV. P. 299; *Vickery v. Comm'n for Lawyer Discipline*, 5 S.W.3d 241, 251–53 (Tex.App.-Houston [14th Dist.] 1999, pet. denied); *see also Vickery*, 5 S.W.3d at 252 (noting that presumptive validity of judgment may apply even more strongly in bench trial). We emphasize, moreover, that the value of specific items of property is not an ultimate issue in the trial court's property division and does not require specific fact findings by the trial court. *Rafferty*, 903 S.W.2d at 376.

Husband challenges the following two conclusions of law:

4. The community estate has claims for reimbursement against the separate estate of [Husband] in the amount of $36,119.

5. As part of a just and right division of the assets and liabilities of the marriage, [Husband] is awarded the community property claim against his separate property of $36,119.

Husband challenges the conclusions of law concerning the reimbursement claim on the following grounds: (1) Wife offered no evidence to support her claim for $1,500 in improvements to his house; (2) the total paid by the community towards his house was $20,423, rather than $24,119; (3) the trial court did not offset $26,000 in benefits to the community estate from rent of Husband's house, and (4) the trial court did not offset benefits valued at $868 for depreciation of his house that was taken on the couple's 1999 joint tax return. The trial court entered findings of fact and conclusions of law, but addressed these issues solely in its conclusions of law without entering separate findings.

 In a decree of divorce, the court shall determine the rights of both spouses in a claim for reimbursement and shall apply equitable principles to (1) determine whether to recognize the claim after taking into account all the relative circumstances of the spouses; and (2) order a division of the claim for reimbursement, if appropriate, in a manner that the court considers just and right, having due regard for the rights of each party. TEX. FAM.CODE ANN. § 7.007(b)(1), (2) (Vernon 2004). The trial court's discretion in evaluating a claim for reimbursement is as broad as its discretion to effect a just and proper division of the community estate. *Penick v. Penick*, 783 S.W.2d 194, 198 (Tex.1988); *Alsenz*, 101 S.W.3d at 655.

 A party claiming the right of reimbursement must plead and prove that the expenditures and improvements were made and that they are reimbursable. *Vallone v. Vallone*, 644 S.W.2d 455, 459 (Tex.1982). The trial court must consider the facts and circumstances, and determine what is just, fair, and equitable. *Penick*, 783 S.W.2d at 197. The trial court is accorded great latitude in applying equitable principles to value a claim for reimbursement. *Id.* at 198.

 Claims for reimbursement may be offset against each other if the court determines that this is appropriate. TEX. FAM. CODE ANN. § 3.408(c) (Vernon 2004). A trial court is required to consider offsetting benefits when a litigant requests that relief. *Gutierrez v. Gutierrez*, 791 S.W.2d 659, 663 (Tex.App.-San Antonio 1990, no writ).

### Fact Findings Support a Reimbursement Claim for an Additional $3,480

On reviewing the record, we discern that finding of fact number nine supports a reimbursement claim to the community estate valued at $39,599, rather than the $36,119 that was awarded in conclusions of law numbers four and five. According to finding of fact number nine, the community disbursed $39,599 in community funds

for Husband's separate property, as follows: $19,248 for insurance, taxes and mortgage payments on Husband's house, $1,500 for improvements to Husband's house, $218 for supplies for Husband's house, $1,028 for utilities for Husband's house, $2,125 for repairs to Husband's house, $12,600 for the separate, credit-card debt that Husband incurred before the marriage, and $2,880 for payments made on the State Farm life insurance policy that Husband owned before the marriage. These findings thus show that Husband owed the community estate $3,480 more than he was ordered to pay as reimbursement to the community estate.

## Sufficiency Challenges to Findings of Fact

Husband contends that Wife offered no evidence to support her claim for $1,500 for improvements to his house, as shown in finding of fact number nine. The record reflects, however, that Wife's "trial inventory and appraisement" was admitted into evidence and established that the community estate spent $1500 on improvements to Husband's house. As well, Wife's testimony referred to a new roof, paint and new flooring as improvements made to Husband's house. Husband has not demonstrated on appeal why this evidence is insufficient to establish that $1,500 was spent on improvements to his house. We overrule Husband's challenges to the sufficiency of the evidence concerning the $1,500 in expenditures for improvements to his house.

Husband further asserts that the total paid by the community estate towards his house was $20,423, rather than the $24,119 shown in the trial court's finding of fact number nine. Husband suggests that the community estate is entitled to only $20,423 for the mortgage payments made on his house. Wife's "trial inventory and appraisement," however, corresponds

to the trial court's finding of fact number nine and thus supports that the community estate spent a total of $24,119 for Husband's house for the following: $19,248 for insurance, taxes and mortgage payments; $1,500 for improvements; $218 for supplies; $1,028 for utilities, and $2,125 for repairs. We overrule Husband's challenges to the sufficiency of the evidence concerning the $24,119 in expenditures by the community estate on his house.

## Offset for Deduction on Tax Return

Husband complains that he did not receive the offsets to which he was entitled because the trial court did not allow him credit for $26,000 for the rental income that the community received from his house and credit for the $868 deduction for the depreciation of his house taken by the community on its 1999 joint tax return. The trial court's findings of fact and conclusions of law do not specifically mention offsets, but do address reimbursements to the separate estates. Accordingly, we may infer omitted findings in support of the trial court's judgment. *See* Tex.R. Civ. P. 299; *Vickery*, 5 S.W.3d at 251–53.

Husband claims that he was entitled to an offset for the $868 deduction for the depreciation to his house taken on the community's 1999 joint tax return. The record shows that Husband admitted that he owed the Internal Revenue Service $1339 in taxes from his 1997 tax return, which resulted in a deduction in that amount from his 1998 tax return filed jointly with Wife. But even if Husband were entitled to an offset for the $868 deduction for the depreciation to his house on the 1999 joint tax return, it appears from the record that he received a benefit from the community estate for his 1997 tax return pertaining to his separate estate. The record thus supports the trial court's failure to award Husband an offset for the

depreciation of his house on the 1999 joint tax return.

### Offset for Rents Received from Lease of Husband's House

■ The record reflects that Husband and Wife agreed that the total amount the community received in rent from the lease of Husband's house was $26,000. Wife contends that the trial court disallowed the offset for the rental receipts from Husband's house for two reasons. Wife first contends that, because the community estate received no rental payments from the lease of Husband's house after October 2000, when the couple separated, the community estate never benefited from the separate property after that date. Wife also contends that Husband was not entitled to an offset for rental payments received before their final separation because Husband used the rental receipts of $855 a month to pay $699 a month for his truck note.[9]

■ The record shows that Husband and Wife married on March 14, 1998, separated for six weeks during the summer of 1998, and finally separated in October 2000. When Husband and Wife married, Husband's house was empty until it was repaired and was rented to a tenant in October 1999. Wife testified that she did not see any rental receipts after the couple separated in October 2000. Thus, according to Wife, only one year's worth of rental receipts, valued at $855 a month for a total of $10,260, was actually placed into the community estate. Although Husband contended that he continued to make deposits into the community estate following the couple's separation, the trial court, as factfinder and judge of the credibility of witnesses, could have determined that Wife was more credible than Husband. Based on the evidence, the trial court, as the factfinder, could reasonably have determined that Husband was entitled to receive only an offset of $10,260 for the rental income used to benefit the community estate.

■ Although Husband was entitled to an offset of $10,260, the trial court was within its discretion in failing to allow Husband a credit in this amount because Husband received the benefit of the increased value to his home in an equal or greater value to the offset to which he was entitled. During the time of marriage, Husband's house increased in value between $10,000 and $20,000.[10] The increased val-

---

9. We disagree with Wife that it would have been proper for the trial court to decline an offset on this basis because the record reflects that Husband's truck was a community asset acquired during the marriage. The truck was included as one of the community assets divided by the court. Thus, even if rental income was used to pay for the truck, because the truck was community property, the community estate benefited from the rental payments. *See Alsenz,* 101 S.W.3d at 654 (noting that community property has been defined as " 'all property and pecuniary rights obtained by, or in the name of, either spouse after the marriage, by toil, talent, thrift, energy, industry, or other productive faculty, and all the rents, issues, profits, fruits, and revenues of separate property' ") (quoting *Logan v. Logan,*

112 S.W.2d 515, 525 (Tex.Civ.App.-Amarillo 1938, no writ)).

10. Wife's testimony established that Husband's house increased in value approximately $20,000 during the marriage, when community assets were expended to benefit the house. She said that the fair market value of Husband's house on the date of marriage was $38,000, and that the fair market value of Husband's house at the time of divorce was $58,000. According to Husband, his house increased in value approximately $10,000 during the marriage. Husband did not testify directly concerning the fair market value of his house, but gave a general assessment that he believed that houses in his neighborhood were selling in the "low fifties" at the time of

ue to Husband's house during the marriage was an asset that could have been included in the community assets subject to division by the trial court, but was not. *See, e.g., Murff,* 615 S.W.2d at 699 (stating that trial court may consider many factors in deciding the estates of the parties, including the size of their separate estates); *Padon v. Padon,* 670 S.W.2d 354, 359 (Tex. App.-San Antonio 1984, no writ) (holding that trial court may consider a spouse's separate property when dividing the spouses' estates); *Wilkinson v. Wilkinson,* No. 03–97–00611–CV, 1999 WL 314783 at *2 (Tex.App.-Austin May 20, 1999, no pet.) (not designated for publication) (stating that trial court may consider enhancement in value of a spouse's separate real property when determining reimbursements). Because Husband's house received an increased value in an equal or greater amount than $10,260 during the marriage, the trial court acted within its discretion by declining to offset the reimbursement claim of $10,260.

After considering all the facts and circumstances, the trial court could have determined that it was fair, just, and equitable to limit Husband's offset to $10,260 from the rental income. The trial court could have further determined that, because Husband's house increased in value between $10,000 and $20,000, the rental income received from the lease of the house approximately equaled the increase in value to the house, and, thus, Husband was not entitled to any offset from the reimbursement claim. *See Penick,* 783 S.W.2d at 197 (holding that trial court should consider facts and circumstances and determine what is just, fair, and equitable).

We overrule Husband's fourth point of error.

marriage and in the "sixties" at the time he

## Economic Contribution

The economic contribution award stems from a claim by the community estate to compensate it for the enhancement in value, derived from community funds, to the house that Wife owned before the marriage. In conclusion of law number three, the trial court assessed a value of $28,953 for the economic contribution to Wife's house made by the community estate. The community estate's entire economic contribution award, valued at $28,953, was awarded to Wife as her sole property.

In issue three, Husband makes two challenges to the economic contribution award. First, Husband asserts that the trial court abused its discretion by "failing to award [Husband] one-half of the community's equitable contribution to [Wife's] separate estate while taking that award into consideration in the calculation of the net award to each party and by intending an award close to 50/50 and favoring [Husband] and effecting a 60/40 award favoring [Wife]." Second, Husband contends that the trial court undervalued the economic contribution award.

### *Division of Economic Contribution Award in Divorce Decree*

A marital estate that makes an economic contribution to property owned by another marital estate has a claim for economic contribution against the benefited estate. TEX. FAM.CODE ANN. § 3.403(a) (Vernon Supp.2004). In a decree of divorce, the court shall determine the rights of both spouses in a claim for economic contribution as provided by Family Code Chapter 3, Sub-chapter E, in a manner that the court considers just and right, having due regard for the rights of each party. TEX. FAM.CODE ANN. § 7.007(a) (Vernon Supp.2004). The court shall fur-

divorced.

ther order a division of a claim for economic contribution of the community marital estate to the separate marital estate of one of the spouses. TEX. FAM.CODE ANN. § 7.007(a)(1). A spouse seeking economic contribution must bring forth sufficient evidence for the factfinder to determine the enhancement value to the benefited estate. *Boyd v. Boyd,* 131 S.W.3d 605, 613 (Tex. App.-Fort Worth 2004, no pet.).

■ Husband's contention that he was due one-half of the economic contribution award ignores the statutory requirement that the award must be divided in a "just and right" distribution. TEX. FAM.CODE ANN. § 7.007(a). Although Husband is correct in stating that Wife was awarded all of the economic contribution value from her separate estate, we nonetheless conclude, for two reasons, that a just and right distribution of the assets occurred under the circumstances here. First, as addressed above, Husband was awarded all of the community-estate reimbursement claims against his separate estate, for a total of $36,119, an amount greater than the $28,953 granted to Wife for the economic contribution award. The record suggests that, rather than dividing the reimbursement claim and the economic contribution award between Husband and Wife, the trial court assigned the respective awards, which were similar in value, to Husband and Wife, respectively. Second, Husband received a just and right division of the marital estate, as discussed in issues one and two above.

We conclude that the trial court did not abuse its discretion under the circumstances here, which include the award of (1) all the economic contribution claim to Wife, (2) all the reimbursement claim to

Husband, and (3) the division of the entire community estate in a just and right manner.

### Amount of Economic Contribution Award

Husband also contends that the trial court abused its discretion by incorrectly assessing a value of $28,953, rather than $55,438, for the economic contribution claim. According to Family Code Chapter 3, Sub-chapter E, the amount of the claim based on economic contribution is equal to the product of (1) the equity in the benefited property on the date of divorce; multiplied by (2) a fraction in which: (A) the numerator is the economic contribution to the property owned by the benefited marital estate by the contributing marital estate; and (B) the denominator is an amount equal to the sum of $(I)$ the economic contribution to the property owned by the benefited marital estate by the contributing marital estate; and $(ii)$ the contribution by the benefited estate to the equity in the property owned by the benefited estate. TEX. FAM.CODE ANN. § 3.403(b) (Vernon 2004).

Husband and Wife recognize that the formula described in Section 3.403(b) of the Family Code is $[Ax(B+C+D)/(B+C+D+E+F)]$. *See id.* They likewise agree to all of the values in the formula, with the exception of (1) the fair market value of Wife's house on date of marriage and divorce and (2) the economic contribution in the form of improvements to Wife's house. These disagreements result in the discrepancy between the assessed value of the economic contribution claim by Husband and Wife. Husband asserts that the economic contribution claim should be $55,438,[11] as com-

---

11. Husband's economic contribution claim came from the following figures:

(A) Total equity at date of divorce $ 96,124.99

pared to the trial court's award of $28,954 based on Wife's figures, which the trial court adopted.[12]

### 1. Fair Market Value of Wife's House

It is undisputed that Wife purchased her house in 1996, and thus before the marriage, for $160,097. The parties' disagreement concerning the fair market value of Wife's house at the time of marriage pertains to Wife's contention that she made $15,000 in improvements to the house prior to marriage, elevating its value to $175,076. Wife testified that she spent $15,000 for the installation of marble tile and formal drapes in her house prior to marriage, thereby enhancing the value of the house by $15,000.

Similarly, Husband and Wife also disagree about the fair market value of Wife's house at the time of divorce. Husband contends the house's value at that time was $205,000, but Wife asserts that the value was $177,812. Husband's asserted value comes from the assessed value of the house at $205,000 for taxation purposes by the Harris County Appraisal District

(HCAD). Husband acknowledged, however, that in his sworn inventory he claimed that the house was worth only $193,600, that he only had a "rough idea" of the fair market value of the house, and that he did not know the fair market value of the house at the time of divorce. Wife testified that she researched her neighborhood to determine the selling price of comparable homes and believed that her home only had a fair market value of about $178,000. She further stated that she was challenging HCAD's assessed value.

■ Based on the record before us, we cannot conclude that the trial court abused its discretion by determining that the fair market value of Wife's house at the time of marriage was $175,076, and that its fair market value at the time of divorce was $177,812, as Wife contended.

### 2. Improvements to Wife's House

■ Husband contends that $3,450 of community funds were spent on improvements that enhanced Wife's house pursu-

(The equity amount was based on the fair market value of the property on the date of divorce at $205,000 minus the principal amount of debt on date of divorce at $108,875)

| | | |
|---|---|---|
| (B) Economic Contribution by Marital Estate (debt reduction) | $ | 28,024 |
| (C) Economic Contribution by Contributing Estate (debt refinancing) | $ | 0 |
| (D) Economic Contribution—Capital Improvements | $ | 3,450 |
| (E) Equity in Property—Date of Marriage | $ | 23,100 |

(Fair Market Value of date of marriage at $160,000 minus principal amount of debt on date of marriage at $136,900)

| | | |
|---|---|---|
| (F) Economic Contribution by Benefitted Estate (during marriage) | $ | 0 |

Husband testified that, by applying these figures to the formula proscribed by the Family Code, the economic contribution claim is $55,438.

12. Wife's economic contribution claim came from the following figures:

| | | |
|---|---|---|
| (A) Total equity at date of divorce | $ | 68,937 |

(The equity amount was based on the fair market value of the property on the date of divorce at $177,812 minus the principal amount of debt on date of divorce at $108,875)

| | | |
|---|---|---|
| (B) Economic Contribution by Marital Estate (debt reduction) | $ | 28,025 |
| (C) Economic Contribution by Contributing Estate (debt refinancing) | $ | 0 |
| (D) Economic Contribution—Capital Improvements | $ | 0 |
| (E) Equity in Property—Date of Marriage | $ | 38,177 |

(Fair Market Value of date of marriage at $175,076 minus principal amount of debt on date of marriage at $136,900)

| | | |
|---|---|---|
| (F) Economic Contribution by Benefitted Estate (during marriage) | $ | 0 |

Wife testified that by applying these figures to the formula proscribed by the Family Code, the economic contribution claim is $28,954.

ant to the "(C)" portion of the Family Code formula, but Wife asserts that no community funds were spent during the marriage for improvements to her house. According to Husband, improvements to Wife's house during the marriage consisted of door refinishing, installing solar screens on windows, and installing a lawn sprinkler system. Although Husband testified that $3,450 in community funds were spent on improvements to Wife's house, he also acknowledged that he did not know whether those funds were actually spent for improvements to Wife's house. Moreover, Husband acknowledged that he did not know which repairs constituted improvements for purposes of his claim for economic contribution. These circumstances warranted the trial court's impliedly determining that Husband did not bring forth sufficient evidence from which the trial court, as factfinder, could determine the enhancement value to Wife's benefited estate allegedly derived from community funds. *See Boyd*, 131 S.W.3d at 613. This determination, in turn, further warranted the trial court's determining that no community funds were spent on improvements to Wife's house. We thus conclude that the trial court did not err by entering its conclusion of law number three by assessing a value of $28,953,[13] as proposed by Wife, for the economic contribution made by the community estate on Wife's house.

We overrule Husband's issue three.

## Cumulative Error

In his fifth point of error, Husband complains that the trial court committed cumulative error, requiring remand for new trial on the property division. Having found no error in Husband's issues one through four, we conclude no cumulative error occurred.

We overrule Husband's fifth point of error.

## Conclusion

We affirm the judgment of the trial court.

---

13. Our application of the formula, however, leads to the slightly higher figure of $29,183.