Opinion issued December 2, 2010



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00095-CV

———————————

Linda Lucile Hallum, Appellant

V.

Lloyd Thomas
Hallum, Appellee



 



 

On Appeal from the 312th Judicial District Court

Harris County, Texas



Trial Court Case No. 2004-58399

 



 

MEMORANDUM OPINION

          Appellant,
Linda Lucile Hallum, appeals from the trial court’s judgment ordering a final
decree of divorce from appellee, Lloyd Thomas Hallum.  In four issues, Linda contends that the trial
court erred in quashing appellant’s subpoena, in characterizing certain
properties as Lloyd’s separate property, and in dividing the property of the
marital estate.  We hold that the trial
court properly quashed appellant’s subpoena and properly characterized the
properties in question as Lloyd’s separate property.  We also hold that, in the absence of findings
of fact, we cannot conclude that the trial court abused its discretion in
dividing the estate.  Accordingly, we affirm.

Background

          Linda
and Lloyd married on March 1, 1970, and separated on October 12, 2004.        Nine days after separating, Linda filed her
original petition for divorce from Lloyd. 
The 312th Judicial District Court held two bench trials in the divorce
proceeding.  The first trial took place
in June 2007, and the second took place in May 2008.  

          On
August 20, 2003, while Linda and Lloyd were still together, Jack Burns executed
three deeds purporting to convey to Lloyd certain undivided, fractional
interests in real property located in the Houston Heights subdivision (herein
the “Heights Properties”).  At the time
of the first trial, the total appraisal value of the fractional interests was
approximately $440,000.  Each deed
states:

[The grantors,] in consideration
of the execution of the trust hereinabove mentioned, and in further
consideration of the sum of Ten Dollars ($10.00) to them in hand paid by the
said LLOYD T. HALLUM, and other good and valuable consideration, the receipt
and sufficiency of which is hereby acknowledged, have sold, granted, and
conveyed, and by these presents do hereby sell, grant and convey unto the said
LLOYD T. HALLUM, all of the undivided . . .

 

Nowhere in the three deeds does it expressly state
that the conveyance was a gift or that the stated consideration was to be paid
out of Lloyd’s separate property. 

          In
June 2007, the trial court conducted the first trial, determining that the
Heights Properties were Lloyd’s separate property.  During that trial, the following was adduced.
 Lloyd became Mr. Burns’ stepson when Mr.
Burns married Lloyd’s mother.  After
Lloyd’s mother died, Mr. Burns continued to be a father figure to Lloyd.  In April 2004, Mr. Burns was in the hospital
dying when he delivered the three deeds to Lloyd.  Lloyd testified that Mr. Burns was aware
Lloyd and Linda had marital trouble and that Mr. Burns did not intend Linda to
have any interest in the Heights Properties.

          Lasca
Burns, who was Mr. Burns’s wife at the time of the conveyance, testified that
Mr. Burns loved Lloyd “very, very much” and that he first introduced Lloyd to
her “as his son.”  Mrs. Burns testified
that she was present when Mr. Burns instructed his lawyer to prepare the deeds
and that Mr. Burns said to his lawyer, “I want my son Lloyd Hallum to have
these lots as separate property.” 
According to Mrs. Burns, Mr. Burns prepared and filed an IRS gift tax
return for the Heights Properties. 
Although she had never seen the gift tax return, she claimed that her
then-husband signed it and gave it to her to mail.  When asked if she brought the form, she
testified that she could not find a copy of it. 
Before trial, Linda had served upon Mrs. Burns a subpoena duces tecum
requesting her to bring to court a copy of the purported IRS gift tax return
showing that gift taxes were paid on the transfer of the Heights Properties.  Mrs. Burns filed a motion to quash the
subpoena, which was granted by the trial court. 

          Before
trial, the court entered three temporary spousal support orders and, at a
subsequent hearing, ordered a fourth support obligation.  The first order directed Lloyd to pay $3,500
per month from November 15, 2004, through June 2006, totaling $68,250 over nineteen
months and two weeks.  The second order
directed Lloyd to pay $5,984 per month from July 1, 2006, through December
2006, totaling $35,904 over six months. 
The third order directed Lloyd to pay $3,942 per month from January 1,
2007, through March 2007, totaling $11,826 over three months.  Although there was no fourth written order,
at a subsequent hearing, the temporary support obligation was again modified,
directing Lloyd to pay $2,425 per month starting on April 1, 2007.

          In
May 2008, the trial court conducted the second trial to determine all other
issues.  The court announced its findings
in June 2008, which were reduced to writing when the court signed the Final
Divorce Decree in November 2008.  In February
2009, the trial court denied Linda’s motion for new trial and signed the
amended divorce decree.  The trial court
found that Linda had the use and benefit of $385,000 in community assets since
the separation and that Lloyd had made all support payments that he was ordered
to pay through the trial court’s temporary orders.

Division of the Marital Estate

          In
her first, third, and fourth issues, Linda contends that the trial court abused
its discretion in dividing the property of the martial estate because the
evidence was insufficient to support its findings.

A.      Standard of Review

An appellate court must reverse and
remand the entire estate for a new division of property if the trial court
committed reversible error that materially affects the trial court’s “just and
right” division of the marital estate.  See Jacobs
v. Jacobs, 687 S.W.2d 731, 733 (Tex. 1985). 
An appellate court will reverse a trial court’s “just and right”
division only if the complaining party shows that the trial court clearly
abused its discretion.  Murff v. Murff, 615 S.W.2d 696, 698 (Tex.
1981); Hailey v. Hailey, 176 S.W.3d
374, 380 (Tex. App.—Houston [1st Dist.] 2004, no pet.).  A trial court abuses its discretion if acts arbitrarily,
unreasonably, without reference to any guiding rules and principles, or without
sufficient supporting evidence.  Bocquet v. Herring, 972 S.W.2d 19, 21
(Tex. 1998); Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241–42 (Tex. 1985); Raymond v. Raymond, 190 S.W.3d 77, 83 (Tex.
App.—Houston [1st Dist.] 2005, no
pet.); Hailey,
176 S.W.3d at 380.  An appellate court
presumes that the trial court properly exercised its discretion.  Murff,
615 S.W.2d at 699.

Under the abuse of discretion standard, an appellate
court reviews the evidence in the light most favorable to the order and
indulges every presumption in favor of the trial court’s order.  See
Walker v. Packer, 827 S.W.2d 833, 839–40 (Tex. 1992);
Holley v. Holley, 864 S.W.2d 703, 706
(Tex. App.—Houston
[1st Dist.] 1993, writ denied).  An
appellate court draws every reasonable inference supported by the record in
favor of the trial court’s judgment.  Gainous v. Gainous, 219 S.W.3d 97, 103
(Tex. App.—Houston
[1st Dist.] 2006, pet. denied).  In
an appeal from a bench trial, an appellate court reviews de novo a trial court’s
conclusions of law and will uphold them on appeal if the judgment can be
sustained on any legal theory supported by the evidence.  BMC
Software Belgium v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002); Hailey, 176 S.W.3d at 383.  In the absence of findings of fact
or conclusions of law, an appellate court must presume that the trial court
made all the findings necessary to support its judgment.  Boyd v.
Boyd, 131 S.W.3d 605, 611 (Tex. App.—Fort Worth
2004, no pet.) (citing Pharo v. Chambers
County, 922 S.W.2d 945, 948 (Tex. 1996)). 


When the appellate record includes the reporter’s
record, the trial court’s factual findings, whether express or implied, are not
conclusive and may be challenged for legal and factual sufficiency of the
evidence supporting them.  See Middleton v. Kawasaki Steel Corp.,
687 S.W.2d 42, 44 (Tex. App.—Houston
[14th Dist.] 1985), writ refused n.r.e.,
699 S.W.2d 199 (Tex. 1985); Tucker v.
Tucker, 908 S.W.2d 530, 532 (Tex. App.—San Antonio
1995, writ denied).  Legal and factual
insufficiency are not independent grounds of error but rather are relevant
factors in an appellate court’s assessment of whether the trial court abused
its discretion.  Zeifman v. Michels, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied).  That is, to determine whether there has been
an abuse of discretion because the evidence is legally or factually
insufficient to support the trial court’s decision, an appellate court engages
in a two-pronged inquiry, determining whether (1) the district court had
sufficient evidence upon which to exercise its discretion, and (2) the district
court erred in its application of that discretion.  Id.
at 588.  

To
determine whether there is legally sufficient evidence to support a finding, an
appellate court considers only the evidence and inferences that support the
finding and disregards all evidence and inferences that support the
contrary.  Sherman v. First Nat’l Bank, 760 S.W.2d 240, 242 (Tex. 1988); Raymond, 190 S.W.3d at 80.  If there is any evidence to support the
finding, an appellate court must uphold the finding.  Sherman,
760 S.W.2d at 242; Raymond, 190
S.W.3d at 80.  Evidence is legally
insufficient (1) when there is a complete absence of a vital fact; (2) when
rules of law or evidence preclude according weight to the only evidence offered
to prove a vital fact; (3) when the evidence offered to prove a vital fact is no
more than a scintilla; or (4) when the evidence conclusively establishes the
opposite of the vital fact.  City of Keller v. Wilson, 168 S.W.3d
802, 810, 815–16 (Tex. 2005).  In
determining the legal sufficiency of the evidence, an appellate court must consider
evidence favorable to the finding if a reasonable fact finder could and
disregard evidence contrary to the finding unless a reasonable fact finder
could not.  Id. at 827.  An appellate
court reviews the evidence in the light most favorable to the finding.  Diamond
Shamrock Ref. Co., L.P. v. Hall, 168 S.W.3d 164, 170 (Tex. 2005).

          To determine whether the evidence was
factually sufficient to support a finding, an appellate court considers and
weighs all evidence that was before the trial court.  Cain v.
Bain, 709 S.W.2d 175, 176 (Tex. 1986); Raymond,
190 S.W.3d at 80.  When an appellant
attacks the factual sufficiency of an adverse finding on an issue on which he
did not have the burden of proof, the appellant must demonstrate the finding is
so contrary to the overwhelming weight of the evidence as to be clearly wrong and
manifestly unjust.  See Cain, 709 S.W.2d at 176. 
When an appellant attacks the factual sufficiency of an adverse finding
on an issue for which he had the burden of proof, the appellant must
demonstrate that the adverse finding is against the great weight and
preponderance of the evidence.  Dow Chem. Co. v. Francis, 46 S.W.3d 237,
242 (Tex. 2001).  An appellate court must
not merely substitute its judgment for that of the fact finder.  Golden
Eagle Archery, Inc. v. Jackson, 116 S.W.3d 757, 761 (Tex. 2003).

          B.      Applicable Law

          In
a decree of divorce, a trial court must “order a division of the estate of the
parties in a manner that the court deems just and right, having due regard for
the rights of each party and any children of the marriage.”  Tex.
Fam. Code Ann. § 7.001 (Vernon 2006).  A “just and right” division does
not require a trial court to divide the marital estate into equal shares.  Murff,
615 S.W.2d at 698–99 &
n.1 (recognizing that community property need not be equally divided); Schuster v. Schuster, 690 S.W.2d 644,
645 (Tex. App.—Austin
1985, no writ).  In dividing the marital
estate, a trial court may consider the following nonexclusive factors:  disparity of incomes, earning capacities of
the parties, financial obligations, fault in the breakup of the marriage,
benefits which the party not at fault would have derived from a continuation of
the marriage, education of each spouse, and the nature of the property to be
divided.  Murff, 615 S.W.2d at 698–99.  

In a decree of divorce, a trial court
may divide only the parties’ community property.  Jacobs, 687 S.W.2d at 733.  Separate property includes, among other
things, property owned or claimed by a spouse before marriage.  See Tex.
Const. art. XVI, § 15 (“All property, both real and personal, of a
spouse owned or claimed before marriage, and that acquired afterward by gift,
devise or descent, shall be the separate property of that spouse. . . .”); Tex. Fam. Code Ann. § 3.001 (Vernon 2006) (defines separate property as that
property owned by spouse before marriage, acquired during marriage by gift,
devise, or descent, or as recovery for personal injuries sustained during
marriage).  The characterization of
property as community or separate is determined by the inception of title,
i.e., when a party first has a right of claim to the property by virtue of
which title is finally vested.  Tex. Fam. Code Ann. § 3.404(a) (Vernon Supp. 2010); Chavez
v. Chavez, 269 S.W.3d 763, 767 (Tex. App.—Dallas 2008, no pet.).  “Once separate property character attaches,
that character does not change because community funds are spent to improve the
property.”  Leighton v. Leighton,
921 S.W.2d 365, 367 (Tex. App.—Houston [1st Dist.] 1996, no writ).

A gift is a voluntary transfer of
property from one person to another made gratuitously and without consideration.
 Hilley
v. Hilley, 161 Tex. 569, 342 S.W.2d 565, 569 (1961); In re L.R.P., 98 S.W.3d 312, 314 (Tex. App.—Houston [1st Dist.]
2003, pet. dism’d).  Three elements are
required to establish the existence of a gift: 
(1) intent to make a gift; (2) delivery of the property; and (3)
acceptance of the property.  Delahoussaye v. Kana, 01-07-00579-CV,
2008 WL 4890131 (Tex. App.—Houston [1st Dist.] Nov. 13, 2008, pet. denied)
(mem. op.).

Property possessed by either spouse in
the course of marriage is generally presumed to be community property.  Tex.
Fam. Code Ann. § 3.003(a) (Vernon 2006). 
To overcome the community property presumption, a party claiming marital
property as separate property must prove the claim with clear and convincing
evidence.  Id. § 3.003(b).  When a party demonstrates by clear and
convincing evidence that property is separate, a trial court may not divest the
party of the separate property.  Cameron
v. Cameron, 641 S.W.2d 210, 215–16 (Tex. 1982).  A party may overcome the presumption by
tracing and identifying the separate property. 
Cockerham v. Cockerham, 527 S.W.2d 162, 167 (Tex. 1975).  Additionally, the general community property
presumption is displaced if a party establishes the predicate facts giving rise
to a separate property presumption.  See Hodge v. Ellis, 154 Tex. 341, 347,
277 S.W.2d 900, 904 (1955); Kyles v.
Kyles, 832 S.W.2d 194, 196 (Tex. App.—Beaumont 1992, no writ).  Property transferred from a grantor to a
grantee is presumed to be a gift, and thus separate property, if the grantee is
the natural object of the grantor’s bounty. 
See Amador v. Berrospe, 961
S.W.2d 205, 207 (Tex. App.—Houston [1st Dist.] 1996, pet. denied); Kyles, 832 S.W.2d at 197.  In turn, this presumption may be rebutted by
clear and convincing evidence.  See Amador, 961 S.W.2d at 207; Kyles, 832 S.W.2d at 197.

          C.      Temporary
Spousal Support Obligation

          In
her third issue, Linda contends that the trial court erred in dividing the
property of the martial estate because the evidence was insufficient to show
that Lloyd made all temporary spousal support payments required of him and that
determination led to an improper windfall of funds to Lloyd.

          Linda
asserts on appeal that the third temporary spousal support order was perpetual,
due on the first of each month until otherwise directed by the trial
court.  The order, however, ended on
March 1, 2007.  In pertinent part, the
third temporary spousal support order states:

It is ORDERED that
Respondent [Lloyd] shall henceforth pay to Petitioner [Linda] the sum of
$3,942.00 each month beginning on January 1, 2007 and like payments on February
1, 2007 and March 1, 2007, until further Orders of this Court.

 

At
trial, the court asked Linda’s counsel, “was there an order for Mr. Hallum to
pay Ms. Hallum spousal support after March 1, 2007?”  Linda’s counsel responded, “I don’t think
so.”

          Although the trial court did not enter a fourth, written temporary
spousal support order, at a subsequent hearing the trial court orally directed
Lloyd to pay $2,425 per month in spousal support, starting on April 1, 2007,
until otherwise directed by the court. 
In his testimony at the second trial, Lloyd admitted that he failed to
make monthly payments due on and after December 1, 2007.  At the close of the second trial, after granting
Linda and Lloyd’s divorce, the court announced that Lloyd’s temporary support
obligation continued until “we get this division done.”  The trial court announced its findings on
June 6, 2008, terminating the fourth, temporary support obligation, which
totaled $33,950 over fourteen months.  As
of June 6, Lloyd had been directed to pay Linda a total of $149,930.  It is undisputed on appeal that Lloyd made
$135,313 in temporary support payments. 
The evidence, therefore, shows an arrearage of $14,617,[1] which Lloyd owed to Linda
at the time the trial court announced its findings.

          In
the divorce decree, the trial court ordered that “all obligations and duties
. . . imposed by the temporary [spousal support] orders
. . . that are not yet discharged shall survive this judgment, and
independent enforcement may be sought.” 
Nonetheless, the trial court also found that Lloyd had already made all
support payments he was ordered to pay under the temporary spousal support
orders.  The court’s finding is in direct
conflict with Lloyd’s testimonial admission that he had failed to make payments
due on and after December 1, 2007.  The
evidence is legally insufficient to support the trial court’s finding that
Lloyd made all support payments because there is no evidence suggesting he did
and the evidence conclusively establishes that he did not.  See
City of Keller, 168 S.W.3d at 815–16. 
However, a determination of insufficiency does not necessary result in a
reversal; that insufficiency must also have rendered the overall, martial
estate division an abuse of discretion.  See Zeifman, 212 S.W.3d at 587.

          The
trial court did not file, and Linda did not request that it file, findings of
fact and conclusions of law reflecting the value the court assigned to each
asset or liability or the net value of the community property.  Linda did attach to her appellate brief both
her and Lloyd’s proposed divisions of community property,[2] but neither of these
documents appear in the record, and an appellate court may not consider
documents attached to an appellate brief that do not appear in the record.  See
Till v. Thomas, 10 S.W.3d 730, 733
(Tex. App.—Houston [1st Dist.] 1999, no
pet.).  Without findings of fact, an
appellate court does not know the basis for the division, the values assigned
to the community assets, and the percentage of the martial estate that each
party received.  See Funderburgh v. Funderburgh, No.
12-08-00428-CV, 2010 WL 2982906, at *2 (Tex. App.—Tyler July 30, 2010, no pet.) (mem. op.); Wells v. Wells, 251 S.W.3d 834, 840–41 (Tex. App.—Eastland
2008, no pet.); Chacon v. Chacon, 222
S.W.3d 909, 916 (Tex. App.—El Paso
2007, no pet.).  Accordingly, it is
impossible for an appellate court to determine that the trial court abused its
discretion in its division of the community property.  Funderburgh,
2010 WL 2982906, at *2; Chacon, 222
S.W.3d at 916; Wells, 251 S.W.3d at
840–41.  In the absence of findings of fact, we cannot
conclude that the trial court abused its broad discretion, as part of its
overall division of the martial estate, with regard to its erroneous finding
that the arrearage of $14,617 had already been paid.

We overrule Linda’s third issue.

          D.      Exclusive
Control Over and Benefit of Community Funds

          In
her fourth issue, Linda contends that the trial court erred in dividing the
property of the marital estate because the evidence at trial was insufficient
to show that Linda had exclusive control over and the benefit of $385,000 in
community funds and that determination led to an improper windfall of funds to
Lloyd.  In her appellate brief, Linda
presumes that the court’s finding was an approximate summation of the $250,000
in certificates of deposit and the $135,313 in temporary support payments,
which Lloyd undisputedly paid to Linda. 
She explains that spousal support payments are not community property
divisible in divorce proceedings.  See O’Carolan v. Hopper, 71 S.W.3d 529,
533 (Tex. App.—Austin 2002, no pet.).

          Other
than Linda’s asserted interpretation of the $383,000 figure, we have no basis,
without findings of fact, to determine how the trial court actually arrived at
that figure.  Funderburgh, 2010 WL 2982906, at *2; Chacon, 222 S.W.3d at 916; Wells,
251 S.W.3d at 840–41.  Accordingly, we cannot conclude that the
trial court abused its discretion in its division of the community property of
the martial estate.  Funderburgh, 2010 WL 2982906, at *2; Chacon, 222 S.W.3d at 916; Wells,
251 S.W.3d at 840–41.

          We
overrule Linda’s fourth issue.

E.      Characterization
of the Heights Properties

          In
her first issue, Linda contends that
the trial court erred in determining that the Heights Properties were Lloyd’s separate property because the evidence
at trial was insufficient to demonstrate that the conveyance from Mr. Burns to
Lloyd was a gift instead of a sale.  Linda
asserts that Lloyd failed to meet his burden of proof in order to overcome the
general presumption that the Heights Properties were community property.

          It
is undisputed that the Heights Properties were conveyed
to Lloyd during Linda and Lloyd’s marriage. 
Accordingly, the Heights Properties are initially presumed to be community
property.  See Tex. Fam. Code Ann. §
3.003(a).  To overcome the community
property presumption, Lloyd had the burden at trial to prove by clear and
convincing evidence that the Heights Properties were his
separate property.  See id. § 3.003(b).  Specifically, Lloyd had to prove by clear and
convincing evidence that Mr. Burns conveyed those properties to Lloyd as a
gift.  See id. § 3.001(2).

The trial court, however, found that
“Mr. Burns considered Mr. Hallum . . . part of his bounty,” thus
giving rise to the presumption that Mr. Burns conveyed the Heights Properties
to Lloyd as a gift.  See Amador, 961 S.W.2d at 207; Kyles,
832 S.W.2d at 197.  Lloyd became the
natural object of Mr. Burns’s bounty, as a stepson, when Mr. Burns married
Lloyd’s mother.  See In re Group Life Ins. Proceeds of Mallory, 872 S.W.2d 800, 802
(Tex. App.—Amarillo 1994, no writ) (former stepdaughter is natural object of
testator’s bounty even though former stepparent and parent divorced).  During the first trial, the court asked
Linda’s attorney if he was “going to dispute . . . that Jack Burns
was the father figure of Mr. Hallum?”  Linda’s
attorney answered “No.”  Similarly, on
appeal, Linda does not challenge that Lloyd was considered by Mr. Hallum to be
the object of his bounty.  

The trial court further found that
Linda, who now bore the burden of proof, failed to overcome the separate
property presumption.  See Amador, 961 S.W.2d at 207; Kyles, 832 S.W.2d at 197.  Linda contends that the plain language of the
deeds constitutes clear and convincing evidence rebutting the presumption of
gift.  See Blair v. Blair, No. 14-97-00832-CV, 1999 WL 649082, at *4 (Tex.
App.—Houston [14th Dist.] 1999, no pet.) (not designated for publication)
(specific language in deed that property is being given for ten dollars and
other valuable consideration along with absence of language specifying
consideration is to be paid out of separate property constitutes clear and
convincing evidence rebutting presumption of gift arising out of transfer from
grandparent to grandchild).  We note that
the Blair opinion, cited by Linda,
was never published and was issued before January 1, 2003, and, accordingly,
has no precedential value.  See Tex.
R. App. P. 47.7(b).  Likewise, the
proposition Linda cites in Blair is
asserted by the court without citation to any precedent.  See
Blair, 1999 WL 649082, at *4.

Standing alone, that the deeds recite
the receipt of ten dollars and other valuable consideration and lack a recital
that the consideration was paid out of separate property tend to show that the
conveyance was a sale, not a gift, even though there is testimony that no
consideration was in fact paid.  Robles v. Robles, 965 S.W.2d 605, 617
(Tex. App—Houston [1st Dist.] 1998, pet. denied).  However, the fact that a deed purports to be
a sale for a nominal consideration, paid or unpaid, does not constitute clear
and convincing that rebuts the direct evidence from Mrs. Burns that the
properties were a gift.  See Sanders v. Sanders, No.
02-08-00201-CV, 2010 WL 4056196, at *16 (Tex. App.—Fort Worth Oct. 14, 2010)
(mem. op.) (nominal consideration of ten dollars recited in deed insufficient
to rebut separate property presumption). 
We conclude that Linda did not present clear and convincing evidence to
rebut the gift presumption and, accordingly, that the trial court did not abuse
its discretion in finding the Heights Properties to be Lloyd’s separate
property. 

We overrule Linda’s first issue.

Quashing of Subpoena Duces Tecum

          In
her second issue, Linda contends that the trial court erred by quashing the
subpoena duces tecum directing Mrs. Burns to produce the purported gift tax
return and thereafter allowing her to testify that the gift tax return was
prepared and filed in connection with the conveyance of the Heights Properties.

          A.      Standard of Review

          An
appellate court will reverse a trial court’s judgment upon a challenge to that
court’s ruling on a discovery matter, including a grant of a motion to quash a
subpoena, only if the complaining party shows that (1) the trial court abused
its discretion in so ruling and (2) the trial court’s error probably (a) caused
the rendition of an improper judgment or (b) prevented the appellant from
properly presenting the case to the appellate court.  See
Tex. R. App. P. 44.1(a); In re CSX Corp., 124 S.W.3d 149, 152
(Tex. 2003); see Calhoun v. Ying, No. 01-05-00489-CV, 2006 WL 2076038,
at *3 (Tex. App.—Houston [1st Dist.] July 27, 2006, no pet.) (mem. op.).  A trial court abuses its discretion if acts
arbitrarily, unreasonably, without reference to any guiding rules and principles,
or without sufficient supporting evidence. 
Gen. Tire, Inc. v. Kepple, 970
S.W.2d 520, 526 (Tex. 1998); Bocquet, 972 S.W.2d at 21.

 

          B.      Applicable Law

          In general, a party may obtain
discovery regarding any matter that is not privileged and is relevant to the
subject matter of the pending action.  Tex. R. Civ. P. 192.3(a).  For the purpose of discovery, a party may
request the issuance of a subpoena directing a nonparty to produce and permit
inspection and copying of a designated document or tangible thing in the
recipient’s possession, custody, or control. 
Tex. R. Civ. P. 176.2(b),
176.3(b), 199.2(b)(5), 205.1(c). 
“Possession, custody, or control of an item means that the person either
has physical possession of the item or has a right to possession of the item
that is equal or superior to the person who has physical possession of the
item.”  Tex.
R. Civ. P. 192.7(b).  A trial
court may not “force a party to create documents which do not exist, solely to
comply with a request for production.”  In
re Guzman, 19 S.W.3d 522, 525 (Tex. App.—Corpus Christi 2000, no pet.)
(citing In re Colonial Pipeline Co., 968 S.W.2d 938, 942 (Tex. 1998)). 

          C.      Analysis     

           Linda asserts that the existence of the
gift tax return is clearly controlling on the issue of whether a gift tax
return was prepared and filed, and goes to the heart of the dispute as to
whether the conveyance was a sale or gift. 
Linda essentially contends that quashing the subpoena probably caused
the rendition of an improper judgment because, otherwise, she could have shown
the non-existence of the gift tax return and thus could have impeached Mrs.
Burns with her own statement that such return had been filed.  Assuming that the trial court erred in
quashing the subpoena, we conclude that the trial court’s rendition of judgment
would nevertheless have been proper.  See Tex.
R. App. P. 44.1(a).

            It
is undisputed, albeit under different rationales, that Mrs. Burns did not have
the gift tax return in her possession. 
According to Mrs. Burns’s testimony, she could not find a copy of the
gift tax return in her possession. 
According to Linda’s theory of the case, the conveyance was a sale, not
a gift, and thus the purported gift tax return never existed.  It is harmless to quash a subpoena duces
tecum directing a person to produce a document that is undisputedly not in that
person’s possession, custody, or control. 
See Tex. R. Civ. P. 176.2(b) (subpoena duces tecum may issue only
for documents or other tangible things that are in person’s possession,
custody, or control).

            As
Linda contends, proof of the gift tax return’s non-existence could have been
used to impeach the credibility of Mrs. Burns’s testimony.  Even though the subpoena was quashed, the
trial court could still have taken into account Mrs. Burns’ claim that she
could not find the gift tax return in evaluating the credibility of her
testimony that the document was prepared and filed.  We hold any error in quashing the subpoena
harmless.  See Tex. R. App. P.
44.1(a).

          We
overrule Linda’s second issue.

Conclusion

          We
affirm the judgment of the trial court.

 

 

 

                                                                   Elsa
Alcala

                                                                   Justice


 

Panel consists of Justices Jennings, Alcala, and
Sharp.











[1]           Linda
claims an arrearage of either $35,855 or $55,565 because she ignores the
automatic termination of the third spousal support order and she calculates the
termination date of the spousal support obligation as the last day of trial,
May 29, 2008, or, alternatively, the date on which the court signed the Final
Divorce Decree, November 3, 2008.

 





[2]           In her proposed division of community
property, Linda estimated the net value of the community estate at
$1,557,721.41, and she suggested distributing 15.8% to Lloyd and 84.2% to
herself.  In his proposed division of
community property, Lloyd estimated the net value of the community estate at
$1,776,636.00, and he suggested distributing 48.6% to himself and 51.4% to
Linda.  According to Linda’s own
estimation, the arrearage of $14,617 represents only 0.94% of the value of the
community estate.  Cf. Mann v. Mann, 607
S.W.2d 243, 245 (Tex. 1980) (to constitute abuse of discretion, property
division must be manifestly unfair).