Opinion issued February 8, 2007

 







In The

Court of Appeals

For The

First District of Texas





NO. 01-05-00094-CV





YOUNAN NOWZARADAN, Appellant


V.


DELORES NOWZARADAN, Appellee





On Appeal from the 311th District Court

Harris County, Texas

Trial Court Cause No. 2002-45019





MEMORANDUM OPINION


 Appellant, Younan Nowzaradan (Younan), appeals a property division
rendered by a final divorce decree that terminated his marriage to appellee,
Delores Nowzaradan (Delores). Trial was to the court, which signed findings of
fact and conclusions of law. Younan contends that the trial court abused its
discretion by dividing the parties' property disproportionately and challenges
certain findings and conclusions that underlie that division. Younan also challenges
the trial court's permitting one of Delores's attorneys to testify as a fact witness. 

Factual and Procedural Background

 Younan is a physician. He married Delores in 1975 after completing a
residency in surgery. Their three children had reached majority age when Delores
filed for divorce in 2002. Younan's medical practice provided a comfortable
lifestyle that enabled Delores to remain at home to care for their children and home. 
Delores did secretarial work before she married, but did not work outside the home
during the marriage, though she provided care for Younan's mother, who lived with
the family for 21 of the couple's 27 years together. 

 Best Care Clinic (BCC or the clinic), the marital home, and cash-value life
insurance were among the couple's most valuable community assets. Younan
founded BCC in 1986 as a primary care and surgical clinic with a staff of three
physicians, and the clinic became the family's chief source of income. Younan
focused on surgery initially, leaving primary care to other physicians, but
increasingly took on primary care responsibilities as those physicians retired. In
addition to a busy surgical practice at BCC, Younan performed surgeries at other
facilities, and profits from those surgeries were directed to accounts receivable at
BCC. Younan claimed he had retired as of June 12, 2004, but this was a disputed
issue at trial. 

 Located in a shopping-strip center on Bellaire Boulevard in Houston, BCC
was open seven days a week, including holidays, and on weekday evenings. 
Beginning in 1987, at least one additional physician worked part-time at the clinic,
which had a staff that also included at least one nurse practitioner, a nurse, two
medical assistants, four lab and surgical assistants, and seven administrative
assistants. The clinic employed several family members, including Younan's
brother who served as office manager for approximately 15 years, and the clinic
paid salaries to the Nowzaradan children, though none performed any work for the
clinic. Credit-card billings of family members were also paid from BCC. 
Beginning in 1998, BCC was run as a "subchapter S" corporation. (1) 

 Delores petitioned for divorce in 2002, claiming insupportability, and later
added claims of cruel treatment. See Tex. Fam. Code Ann. §§ 6.001-.002 (Vernon
2006). Younan counterpetitioned for divorce, claiming insupportability. The trial
court issued extensive pretrial temporary orders that pertained to support for
Delores, maintaining the marital home, and that prohibited disposition of the clinic,
insurance policies, and other community assets. 

 The divorce proceedings were stayed temporarily by one of two receiverships
ordered by the trial court and were stayed for four months by Younan's bankruptcy
petition, filed on March 8, 2004, the fourth day of trial, until the bankruptcy court
dismissed Younan's petition as a bad-faith filing. Under the first receivership, of
December 31, 2003, the receiver was ordered to supervise an attempted stock-purchase sale of BCC for $150,000 that Younan had negotiated independently and
subject to court approval. Under the terms of that sale, Younan was to retain the
clinic's outstanding accounts receivable, which were estimated at that time at
approximately $4 million. The receiver was also charged to investigate other
possible buyers and had additional duties relating to maximizing any benefit to the
community estate. Under the second receivership, which occurred just before trial
resumed on June 30, 2004, the same receiver was appointed to assume control over
BCC's accounts receivable. 

 In both receiverships, the responsibilities of the receiver were hampered by
her inability to obtain information, in particular to evaluate the clinic's accounts
receivable, and her conviction that the information Younan provided to her was
neither accurate nor truthful, in part because his information differed consistently
with that provided by his brother, who managed BCC. The receiver was able to
negotiate a significantly increased price over the offer Younan had received, but the
stock purchase did not materialize. Likewise, an asset-purchase of BCC for $1
million, which the receiver pursued independently, did not materialize. The
receiver emphasized that any asset transfer of BCC would require court supervision
because of potential claims of fraudulent transfer. (2)

 Expert opinion testimony differed widely concerning valuation of BCC, and
the experts used different methods and approaches. Younan's expert placed the
value of BCC at $240,000, but Delores' experts stated its value alternatively at $1.4
million, using an "income" approach, and $550,000, using an asset approach. Like
the receiver, Delores's experts emphasized that obtaining accurate information and
even court-ordered discovery from Younan complicated their valuations. The trial
court reconciled the experts' opinion by valuing the clinic at $825,000.

 Though each party filed a pretrial inventory and appraisement, the trial
court's findings confirm that Younan did not verify his filing and did not assign
specific values to five assets, which included a partnership and four limited
partnerships. (3) The findings and conclusions also confirm that Younan violated
temporary orders for support of Delores and maintenance of the marital home,
which resulted in loss of utility service and threatened litigation for failure to pay
home-association fees. Though Younan was $14,000 in arrears under the trial
court's temporary orders, the record demonstrates that, during the same pretrial
period, Younan continued his personal investment pursuits, which he financed by
pledging an insurance policy with a cash value of almost $1 million as security, and
assisted the couple's son by advancing startup funds for a business. (4) The trial
court also found that Younan recovered insurance-coverage payments for damage
to the couple's residence, but did not dedicate the funds to the needed repairs.

 The trial court's findings also specify that Younan complicated the discovery
process by concealing and withholding records, obstructing discovery, asserting
baseless privileges, failing to disclose essential information, denying access to
records, and failing to comply with court orders. As found by the trial court,
Younan's conduct not only increased Delores's attorney's fees by 40 %, but also
prevented her from obtaining previously requested discovery that Younan had been
ordered to provide. As recited in the court's findings and further demonstrated by
the record, Younan's delays in furnishing repeatedly requested discovery resulted in
widely varying evaluations of BCC and its accounts receivable, approximately
$600,000 of which remained unsubstantiated at trial. 

 The trial court attributed fault in the breakup of the marriage to
Younan, dissolved the marriage on grounds of cruelty and insupportability,
and concluded that Younan committed waste of community assets, for which
the court rendered judgment in favor of the community for $380,000.00, as
recited in the final divorce decree of October 29, 2004. The decree
acknowledges the separate property identified in Delores's testimony and
her sworn inventory and appraisement. In its conclusions of law, the trial
court recites that, in effecting a "just and right" division of the parties'
property, the court awarded the equivalent of 70% of the community estate
to Delores and the equivalent of 30% of the community estate to Younan. 
Property awarded to Delores included the separate property she had
identified in her sworn inventory and appraisement and the marital home;
property awarded to Younan included the community's full interest in BCC. 

Division and Valuation of the Parties' Property

 In his first issue, which presents multiple challenges to the trial court's
division of property, Younan argues that the trial court awarded Delores
"virtually 100% of all assets of real value" or, in the alternative, several
times that amount, and that the division favored Delores in a "grossly
disproportionate" manner and was, therefore, neither just nor right, which
compels a remand for a new property division. Younan asserts a specific
challenge to valuation of BCC at $850,000 and contends that the valuation
erroneously included Younan's professional goodwill. In addition, Younan
challenges the court's valuation of several specific items of community
property and Delores's separate property. 

A. Standard of Review

 Section 7.001 of the Family Code requires trial courts to divide "the
estate of the parties" to a marriage as "the court deems just and right, having
due regard for the rights of each party." Tex. Fam. Code Ann. § 7.001
(Vernon 2006); see Hailey v. Hailey, 176 S.W.3d 374, 380 (Tex.
App.--Houston [1st Dist.] 2004, no pet.); see also Eggemeyer v. Eggemeyer,
554 S.W.2d 137, 139 (Tex. 1977) (defining "estate of the parties," for
purposes of predecessor to section 7.001, as community property only, thus
excluding parties' separate property). 

 We review property-division issues for abuse of discretion. Schlueter
v. Schlueter, 975 S.W.2d 584, 589 (Tex. 1998); Wilson v. Wilson, 132
S.W.3d 533, 536 (Tex. App.--Houston [1st Dist.] 2004, pet. denied). The
discretion vested in the trial court by section 7.001 is broad; we must
presume that the trial court exercised it properly and may not alter the
division unless the complaining party establishes a clear abuse of the trial
court's discretion. Schlueter, 975 S.W.2d at 589; Murff v. Murff, 615
S.W.2d 696, 698 (Tex. 1981); Hailey, 176 S.W.3d at 380; Wilson, 132
S.W.3d at 536; Vannerson v. Vannerson, 857 S.W.2d 659, 668-69 (Tex.
App.--Houston [1st Dist.] 1993, writ denied). 

 A trial court abuses its discretion when it acts arbitrarily or
unreasonably and without reference to any guiding rules or principles. See
Walker v. Packer, 827 S.W.2d 833, 839 (Tex. 1992); Hailey, 176 S.W.3d at
380; Holley v. Holley, 864 S.W.2d 703, 706 (Tex. App.--Houston [1st Dist.]
1993, writ denied). Because a trial court has no discretion in determining
what the law is, which law governs, or how to apply the law, we review this
category of discretionary rulings de novo. See Walker, 827 S.W.2d at 840. 

 When we review a ruling that results from the trial court's having
resolved underlying facts, however, we must defer to the trial's factual
resolutions and any credibility determinations that may have affected those
resolutions and may not substitute our judgment for the trial court's
judgment in those matters. See id. at 839-40; see also Murff, 615 S.W.2d at
700 (noting that in bench trial of divorce case, trial court has opportunity to
observe spouses and assess their needs, potential, and credibility and is
empowered to apply its understanding and experience of law and human
nature; further noting that "mathematical precision is usually not possible"
in dividing marital estate). If probative evidence supports the trial court's
resolution, or if reasonable minds could differ as to the result, we defer to
the trial court's factual determinations. See Walker, 827 S.W.2d at 839-40
(requiring deference to fact-based determinations); Holley, 864 S.W.2d at
706; Vannerson, 857 S.W.2d at 665; Smith v. Smith, 115 S.W.3d 303, 305
(Tex. App.--Corpus Christi 2003, no pet.). 

 Under the abuse-of-discretion standard, lack of sufficient evidence,
whether legal or factual, does not constitute an independent ground on which
to premise error; sufficiency of the evidence is, however, a relevant factor in
assessing whether the trial court abused its discretion. See Beaumont Bank
v. Buller, 806 S.W.2d 223, 226 (Tex. 1991); Dunn v. Dunn, 177 S.W.3d 393,
396 (Tex. App.--Houston [1st Dist.] 2005, pet. denied); Holley, 864 S.W.2d
at 706; Pickens v. Pickens, 62 S.W.3d 212, 214 (Tex. App.--Dallas 2001,
pet. denied); see also Wilson, 132 S.W.3d at 537-38 (applying settled
factual-sufficiency standard) (citing Cain v. Bain, 709 S.W.2d 175, 176
(Tex. 1986)), and holding that trial court abused its discretion in dividing
marital estate because factually insufficient evidence supported the
division); Alsenz v. Alsenz, 101 S.W.3d 648, 655-56 (Tex. App.--Houston
[1st Dist.] 2003, pet. denied) (holding same, in context of claim for
reimbursement). 

 With the exception of his challenge to two accounts allocated to
Delores as her separate property, Younan argues that the evidence is
factually insufficient to support either the trial court's division of the
community property or its valuations of the community-property assets. In
applying the factual-sufficiency factor to the trial court's exercise of its
discretion in dividing the estate and setting those values, therefore, we
examine all of the evidence and may conclude that the trial court abused its
discretion only if a finding supporting the determination is so against the
great weight and preponderance of the evidence that it is clearly wrong and
unjust. See Wilson, 132 S.W.3d at 537 (applying Cain, 709 S.W.2d at 176).


B. Accounts Awarded to Delores as Her Separate Property

 Younan challenges the award of two IRA accounts to Delores as her
separate property, as she identified them in her inventory and appraisement,
contending they are community property, as he identified them in his
inventory and appraisement. Younan relies on the presumption of
community stated in section 3.003 of the Family Code. See Tex. Fam. Code
Ann § 3.003(b) (Vernon 2006). 

 Pursuant to the Texas Constitution and the Family Code, a spouse
retains separate property on divorce, see Eggemeyer, 554 S.W.2d at 139, but
the party claiming that property is separate must meet its burden of proof by
clear and convincing evidence. See Tex. Const. art. XVI § 15 (amended
1999); Tex. Fam. Code Ann. §§ 3.001(1), (2), 3.003(b); In re C.H., 89
S.W.3d 17, 25 (Tex. 2002); Vannerson, 857 S.W.2d at 669-70. Evidence is
clear and convincing if it will produce in the mind of the trier of fact a firm
belief or conviction of the truth of the allegation to be proven. In re C.H., 89
S.W.3d at 25. Younan contends that the community presumption applies to
the two accounts because Delores produced no evidence at trial about the
accounts and therefore did not meet her evidentiary burden to establish the
separate property nature of the accounts. 

 Younan's contentions ignore that Delores identified the two accounts
as her separate property in her sworn, second amended inventory and
appraisement. Delores filed this document before trial, in compliance with
the trial court's orders and local rules, and it was admitted into evidence at
trial, but Younan did not file a sworn inventory and appraisement to
controvert Delores's filing. Because the inventory and appraisement was
both properly sworn and admitted into evidence, the document constituted
probative evidence, sufficient to overcome the community-property
presumption, that the two accounts were Delores's separate property. See
Vannerson, 857 S.W.2d at 671. Moreover, the record affirmatively negates
Younan's contention that Delores failed otherwise to establish the separate
character of the funds in the accounts. Delores and her sister testified that
the funds derived from an inheritance and from payments to her as a trust
beneficiary from the estate of her parents. In addition, she provided expert
opinion testimony and documentary evidence to support her claim. 

 Taking together Delores's sworn inventory and appraisement and the
evidence that she presented at trial, and also considering that Younan did not
controvert her sworn, separate-property claim, we hold that clear and
convincing evidence supports the trial court's recognizing the two
challenged IRA accounts as Delores's separate property and therefore hold
that Delores overcame the presumption that the accounts were community
property. 

 We reject Younan's contention that the trial court abused its discretion by
awarding the two accounts in question to Delores as her separate property. C. Disproportionate Division of Community Property 

 Younan argues that the inequity of the 70%-30% division categorically
compels a remand for a new property division. Well-settled law, however, 
recognizes that community property need not be equally divided. See Murff, 615
S.W.2d at 698-99 & n.1 (citing cases decided from 1949 through 1979
upholding disproportionate divisions of property). When the circumstances
demonstrate a reasonable basis, a trial court may order an unequal division of the
community property. See id. at 698-99; Hailey, 176 S.W.3d at 380 (citing 
Robles v. Robles, 965 S.W.2d 605, 621 (Tex. App.--Houston [1st Dist.] 1998,
pet. denied)); Vannerson, 857 S.W.2d at 668; Huls v. Huls, 616 S.W.2d 312, 317
(Tex. Civ. App.--Houston [1st Dist.] 1981, no writ). But, the division of
property must not be so disproportionate that it is inequitable, and circumstances
must justify awarding more than half of the community estate to one spouse. 
Hailey, 176 S.W.3d at 382 (citing Patt v. Patt, 689 S.W.2d 505, 507 (Tex.
App.--Houston [1st Dist.] 1985, no writ)). (5)
 As Murff and this Court's interpretations of Murff demonstrate, myriad
factors become relevant and may properly be considered in dividing the
community-property estate under section 7.001 of the Family Code. See Murff,
615 S.W.2d at 699. These factors include (1) any disparity of incomes or
earning capacities of the spouses; (2) their capacities and abilities; (3) benefits
that the party not found at fault would have derived from continuation of the
marriage; (4) business opportunities of the spouses; (5) their education, (6)
relative physical conditions, and (7) relative financial conditions; (8) disparity in
ages, (9) differences in the size of each spouse's separate estate; (10) the nature
of the property to be divided; (11) probable future need for support; (12) the
award of custody of any minor children; (13) fault in the breakup of the
marriage; (14) length of the marriage; (15) a spouse's dissipation of the estate;
(16) attorney's fees; and (17) any tax consequences. See Murff, 615 S.W.2d at
699; Hailey, 176 S.W.3d at 380; Alsenz, 101 S.W.3d at 655; Vannerson, 857
S.W.2d at 669; Massey v. Massey, 807 S.W.2d 391, 398 (Tex. App.--Houston
[1st Dist.] 1991, writ denied); Tex. Fam. Code Ann. § 7.008 (Vernon 2006)
(authorizing consideration of tax consequences). 

 Murff confirmed that a trial court may, but need not, take fault into
consideration when dividing an estate. Murff, 615 S.W.2d at 698; see Massey,
807 S.W.2d at 398; see also Smith v. Smith, 836 S.W.2d 688, 693 (Tex.
App.--Houston [1st Dist.] 1992, no writ) (holding that division should not
punish spouse found to be at fault) (citing Young v. Young, 609 S.W.2d 758, 762
(Tex. 1980)). The trial court may also take into consideration that a spouse
unfairly depleted or dissipated community assets and may, as here, award the
aggrieved party a judgment for the value of those assets as a means of equalizing
the community estate. See Murff, 615 S.W.2d at 699; Massey, 807 S.W.2d at
404. (6) 

 In contrast to Delores, who had not been in the workplace since her
marriage, Younan, as a physician and surgeon, is a well-educated professional
who experienced financial success in establishing and maintaining BCC and, in
addition, had a network of physicians who referred surgical patients to him. 
With no physical limitations or illnesses demonstrated by the record, Younan
who was 60 years old at trial, can expect to continue to achieve continuing
financial success for at least some time, and as the record demonstrates, had
already taken steps in that direction despite closing BCC. Though she benefitted
from Younan's success during the marriage, Delores would necessarily be
deprived of those benefits because of the divorce and, with no employment
history for over 27 years, has little reasonable expectation of financially
successful employment after this divorce. 

 To these factors, we add our consideration of the following findings by
the trial court, which Younan does not challenge: Younan was at fault in the
breakup of the marriage; he permitted the marital home to deteriorate, despite
recovering insurance payments for damage, and generally allowed the residence
to fall into disrepair; he engaged in day trading that resulted in significant losses
to the community; and the attorney's fees payable from the community estate for
Delores's counsel increased 40% as a result of Younan's determined strategy to
avoid disclosure of financial information pertinent to division of the community
estate. As the record also demonstrates, Younan placed significant community
assets at risk while this divorce action was pending, and his failure to comply
with court orders left Delores without utilities and placed her at risk of litigation,
while he simultaneously directed substantial funds to other sources of his
choosing. The fees, expenses, and delay generated by Younan's bad-faith
bankruptcy filing further taxed the community estate.

 On considering the record presented, in particular the trial court's
unchallenged findings, according to the settled, governing factors, we hold that
Younan has not demonstrated that the trial court's decision to award Delores
70% of the community property was so disproportionate as to be inequitable
and, therefore, has not demonstrated that the trial court clearly abused its
discretion by that disposition. 

D. Valuation of BCC

 Younan's challenge to the trial court's valuation of the BCC clinic at
$825,000, (7) presents an exhaustive, item-by-item analysis of the testimony of
Delores's expert, as well as the testimony offered by his own expert and the
receiver. Younan focuses especially on the component of valuation that must
necessarily be attributed to this personal, professional goodwill, which derived
from his surgical practice and would necessarily be excluded by his departure
from the clinic, as well as several pending lawsuits that would also necessarily
affect potential purchasers, in addition to other obligations. 

 Texas law distinguishes the personal goodwill of a professional practice,
here attributable solely to Younan, from its commercial goodwill. See Salinas v.
Rafati, 948 S.W.2d 286, 290 (Tex. 1997); Nail v. Nail, 486 S.W.2d 761, 764
(Tex. 1972). Professional goodwill "attaches to the person of the professional . .
. as a result of confidence in his . . . skill and ability [; it] does not possess or
constitute an asset separate and apart from the professional's person, or from his
individual ability to practice his profession[; and, therefore,] would be
extinguished in the event of the professional's death, retirement, or
disablement." Rathmell v. Morrison, 732 S.W.2d 6, 17 (Tex. App.--Houston
[14th Dist.] 1987, no writ) (citing Nail, 486 S.W.2d at 763-64). In valuating a
business interest for purposes of dividing community property on divorce, the
personal goodwill of an individual must be excluded. See Finn v. Finn, 658
S.W.2d 735, 740-41 (Tex. App.--Dallas 1983, writ ref'd n.r.e.). The value to
the community estate is limited to the commercial goodwill of the business--its
value as a recognized business, separate and apart from the individual--and is
properly considered an asset when dividing a community estate. See Salinas,
948 S.W.2d at 291 (citing Geesbreght v. Geesbreght, 570 S.W.2d 427, 436 (Tex.
Civ. App.--Fort Worth 1978, writ dism'd)). 

 We disagree with Younan, who apparently contends that the trial court's
valuation of BCC erroneously, but necessarily, included the professional
goodwill of Younan's surgical practice, or, alternatively, that the clinic's value
consisted solely of Younan's personal goodwill and had no commercial
goodwill. The record negates both contentions and offers nothing to suggest that
the trial court's $850,000 valuation is erroneously premised on Younan's
personal, professional goodwill.

 As the record demonstrates, both Younan's and Delores's valuation
experts assigned a specific value to Younan's personal goodwill. Both excluded
it from their valuations, and the trial court's findings specify that Delores's
expert's valuation excluded goodwill. Moreover, the record reflects that the
BCC clinic had significant commercial goodwill, due to its name, location,
extended hours, client base, and "walk-in" practice, all of which could
potentially carry over to any new owner. 

 Younan also emphasizes the potential, yet unascertained, effect of pending
litigation on valuation of BCC. But, he also relied, through his expert, on the
asset approach in his valuation of BCC. Under an asset transfer, as opposed to a
stock transfer, any successor would acquire BCC's assets without incurring any
of its liabilities unless the successor expressly assumed those liabilities. See
Tex. Bus. Corp. Act. Ann. art. 5.10(B)(2) (Vernon 2003); (8) C.M. Asfahl Agency
v. Tensor, Inc., 135 S.W.3d 768, 781 (Tex. App.--Houston [1st Dist.] 2004, no
pet.) (quoting same); Suarez v. Sherman Gin Co., 697 S.W.2d 17, 20-21 (Tex.
App.--Dallas 1985, writ ref'd, n.r.e.) (contrasting stock and asset-purchase cases
decided under pre-article 5.10(B)(2) law). 

 As the receiver explained in her testimony, of the two potential purchases
that she negotiated, the first, initiated by Younan, was a stock purchase, in which
contingent liabilities would be a necessary consideration, but also in which
Younan sought to retain accounts receivable. But, the receiver also pursued a
sale of the assets of BCC, in which liabilities would be excluded unless
expressly assumed. Because no sale had materialized by the time of trial, and,
therefore, the type of any future purchase remained unknown, and any future
liability of BCC also remained unknown, the trial court did not abuse its
discretion by not allocating a specific value to BCC for potential liability. 

 The record demonstrates that the parties' experts differed widely in their
valuation of the clinic, in part because their methods differed significantly, and
both valuation experts differed in the significance they attached to many factors
and accused the opponent of erroneously including, omitting, overvaluing, and
undervaluing certain factors. These factors include the receiver's failed attempts
to sell BCC; the implications of pending malpractice suits, given that Younan
had not purchased "tail" insurance coverage (9) despite his announced intent to
retire, while renewing malpractice coverage; contingent recovery of accounts
receivable and other funds sought by BCC; and the transferability of the lease
for the clinic premises, which Younan had recently renewed. In addition, the
record clearly demonstrates that Delores's experts were significantly hampered
in placing a value on BCC by Younan's concerted and consistent tactics of
delaying and hiding crucial information, most especially concerning accounts
receivable.

 Having reviewed the record and having accorded the deference due the
trial court, as the sole fact finder and determiner of credibility, we conclude that
valuation of BCC clinic at $850,000 is not manifestly unjust and, therefore, that
the trial court did not abuse its discretion by making that valuation. 

E. Valuation of Other Assets and Liabilities

 Younan's challenge to the trial court's property division also attacks
allocations and values for items of personalty and certain liabilities, as follows: 
a bank account, awarded to Younan; the Mercedes Benz, awarded to Younan;
the furnishings of the home, awarded to Delores; proceeds from a life-insurance
account, awarded to Younan; and loans to individuals and businesses, assigned
for collection to Younan. 

 Younan has waived his challenges, which essentially repeat his trial
contentions concerning these portions of the community estate. As recited in the
trial court's findings, Younan did not submit a sworn inventory and
appraisement and, as a consequence, was not permitted to controvert any values
stated in Delores's sworn inventory and appraisement. Cf., Vannerson, 857
S.W.2d at 671 (holding that trial court properly relied on and took judicial notice
of one party's sworn inventory, despite its not having been introduced into
evidence). In contrast to Vannerson, the trial court admitted Delores's sworn
inventory into evidence. Younan did not challenge either admission of the
inventory or the trial court's prohibition against controverting Delores's
inventory, and his challenges in this appeal do not encompass the finding by the
trial court that recites that ruling. We conclude, therefore, that Younan did not
preserve any error concerning the trial court's exercise of its discretion in either
valuing or allocating these assets and liabilities. 

 We overrule Younan's first issue.

Testimony of Counsel as Fact Witness

 Younan's second issue challenges the trial court's permitting one of
Delores's trial counsel to testify concerning her investigation into whether
Younan was performing bariatric surgery at another facility. During her
testimony, counsel stated that she placed a telephone call in which she identified
herself by a false name, stated that she was inquiring on behalf of her daughter,
and inquired about attending an informational session concerning bariatric
surgery that would be presented by Younan. Counsel played a tape of the
conversation during her testimony. 

 Assuming that admitting counsel's testimony was error, we hold that it
was harmless, because it was cumulative of other evidence that Younan was
either pursuing options to continue working, or was already working at other
facilities, despite his announced retirement. See GTE Sw., Inc. v. Bruce, 998
S.W.2d 605, 620 (Tex. 1999) (citing Tex. R. App. P. 44.1(a)(1) as mandating
that no judgment may be reversed on appeal on the ground that the trial court
made an error of law unless the error complained of probably caused the
rendition of an improper judgment). Moreover, well-settled law recognizes that
we may presume, in an appeal from a bench trial, as here, that the trial court
ignored all improperly admitted evidence. See Victory v. State, 158 S.W.2d 760,
765 (Tex. 1943); Sw. Bell Media, Inc. v. Lyles, 825 S.W.2d 488, 498-99 (Tex.
App.--Houston [1st Dist.] 1992, writ denied); Schoeffler v. Denton, 813 S.W.2d 
742, 745 (Tex. App.--Houston [14th Dist.] 1991, no writ). We note, in this
regard, that the trial court commented, at the conclusion of counsel's testimony
and in overruling Younan's repeated objection, "I will concede [the testimony]
doesn't appear to have very much probative value for anything, but it is what it
is." 

 We overrule Younan's second issue. 

Conclusion

We affirm the judgment of the trial court.





 Sherry Radack

 Chief Justice


Panel consists of Chief Justice Radack and Justices Jennings and Bland.
1. See generally Thomas v. Thomas, 738 S.W.2d 342, 343-(Tex. App.--Houston [1st Dist.]
1987, writ denied) (construing 26 U.S.C. § 1361 et seq. (1982 & Supp. 1984), pursuant to
which subchapter S corporation benefits from corporate shield, and corporate income passes
directly to shareholders as personal income, rather than as corporate income, thus avoiding
double taxation of shareholder and, thus, double taxation of community estate of married
shareholder). 
2. See generally Uniform Fraudulent Transfer Act, Tex. Bus. & Comm. Code Ann. §§
24.001-.012 (Vernon 2002). 
3. The trial court denied Delores's pretrial motion to strike Younan's inventory, but ruled that
Younan would not be permitted to contravene the values stated in Delores's sworn inventory. 

4. Younan does not challenge the findings and conclusions referred to in this paragraph and the
paragraph that follows.
5. We distinguish Belz v. Belz, 667 S.W.2d 240 (Tex. App.--Dallas 1984, writ ref'd n.r.e.) and
Aronson v. Aronson, 590 S.W.2d 189 (Tex. Civ. App.--Dallas 1979, no writ), on which
Younan relies to contend that the trial court categorically abused its discretion based solely
on its having awarded Delores 70% of the community estate. 

Belz arose from a disposition that awarded 77% of the community estate to one
spouse. Belz, 667 S.W.2d at 245. The Dallas Court of Appeals held that the trial
court abused its discretion by ordering a "clearly inequitable disposition of the
community estate." Id. The court's holding is not, however, premised on the 77%
awarded, as Younan suggests, but derives instead from the trial court's having
independently awarded the spouse a money judgment for conspiracy and fraud "over
and above" the fraud damages awarded by the jury. See id. at 244-45. Aronson also
arose from a division held to be inequitable. See Aronson, 590 S.W.2d at 189-90. 
The disproportionality, however, derived from awarding one spouse assets that
totaled over $90,000, yet awarding the other spouse assets that were not only valued
at $36,909.00, but were encumbered by over $41,000 of indebtedness, which
rendered any award meaningless. See id. at 190.


We decline to address, however, Younan's alternative, conclusory contention that the
trial court awarded Delores 100% or "virtually all" of the community estate; Younan
does not demonstrate, either through argument or based on the record, either that this
occurred or how this is an accurate description of the disposition of the community
estate. See Tex. R. App. P. 38.1(h). 

6. Younan's arguments do not encompass an independent challenge to the judgment awarded
to Delores. 
7. Younan's arguments encompass a contention, raised only on appeal, that BCC was 
essentially worthless, which necessarily conflicts with the $240,000 valuation by his own
expert. In addition, Younan attacks the trial court's $825,000 valuation of BCC as a
statement of "market value," though the trial court did not use those terms, and proposed a
definition of "fair market value" derived from City of Pearland v. Alexander, 483 S.W.2d
244 (Tex. 1972), but, likewise not presented to the trial court. We decline to address these
contentions because Younan failed to preserve them in the trial court. See Tex. R. App. P.
33.1(a). 
8. "A disposition of any, all, or substantially all, of the property and assets of a corporation . .
. except as otherwise expressly authorized by another statute, does not make the acquiring
corporation, foreign corporation, or other entity responsible or liable for any liability or
obligation of the selling corporation that the acquiring corporation, foreign corporation, or
other entity did not expressly assume." Tex. Bus. Corp. Act. Ann. art. 5.10(B)(2) (Vernon
2003).
9. See Woods v. Mercer, Inc., 769 S.W.2d 515, 516 (Tex. 1988) (explaining that "tail coverage"
essentially extends policy-coverage period of "claims-made" policy by allowing "additional
time to make claims for injuries that arose from events occurring during the time the policy
was in effect").