# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00500-CV

**Jonathan Scott Micklethwait, Appellant**

**v.**

**Marina Karitznova Micklethwait, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
NO. D-1-FM-05-006484, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In this appeal from a final divorce decree, Jonathan S. Micklethwait challenges the trial court's discretion in determining the amount of child support payment and the division of marital property, and its failure to prohibit Jonathan's former spouse, Marina Karitznova Micklethwait, from driving with their child in the car or from international travel with the child. We affirm the judgment.

After Jonathan and Marina met over the Internet in October 2002 and Jonathan visited Marina's home in Russia, Marina moved to Texas in January 2004 with her then six-year-old son to live with Jonathan. The couple married on March 28, 2004, and a child was born of the marriage on September 28, 2004. After Marina traveled to Russia with both children to visit her family during the summer of 2005 and returned to Texas on September 27, Jonathan filed for divorce on September 29, 2005.

A bench trial was held on June 19-20, 2006.  The trial court signed the final divorce decree on July 20, 2006, naming Jonathan and Marina joint managing conservators.  The court ordered, among other things, that Jonathan have the exclusive right to designate the primary residence of the child born of the marriage within Travis County; that Marina receive child support; that Jonathan have the exclusive right to make and consent to medical and dental decisions and treatments; that Marina be entitled to a visitation schedule; that Marina be required to participate in an intensive alcohol treatment program and to attend aftercare as recommended; and that the parties would provide written notice as specified for international travel.  At the request of the parties, the court made findings of fact and conclusions of law, which included the following findings of fact:

- That it is in the best interest of the child that both parents be appointed joint managing conservators and that Jonathan have the exclusive right to designate the child's primary residence within Travis County;

- That it is in the best interest of the child for Jonathan to have the right to make medical decisions involving invasive procedures and that Marina failed to provide and seek proper dental care for their child and her other child;

- That Marina suffers from alcoholism and has demonstrated an inability to adequately provide care for and protect the child during extended periods of possession;

- That Marina has completed a substance abuse evaluation concluding that no treatment or counseling was recommended, but that a more comprehensive evaluation and participation in an alcohol treatment program, and completion of a parenting program, will enable her to more adequately care for the child;

- That the child's visitation with Marina be limited until completion of alcohol treatment and parenting programs when it will be in the child's best interest to visit with Marina in accordance with the schedule set forth in the standard possession order.

2

The court made additional extensive findings regarding travel and child support. Marina's notice of appeal was dismissed as untimely;[1] Jonathan now timely brings this appeal.

## DISCUSSION

*Child Support*

In his first issue, Jonathan complains that the court abused its discretion in awarding child support payments to Marina even though Jonathan was named the joint managing conservator with the exclusive right to establish the primary residence of the child. He contends that he should not have to pay child support in the amount of $848 per month. The trial court found Jonathan's net monthly income to be $1,736.97 and ordered a monthly child support payment equivalent to 49%, computed using the percentage guidelines of the family code. Jonathan challenges the court's award of child support because he is the joint managing conservator with the exclusive right to establish the child's residence and Marina's visitation is limited until she completes her alcohol and parenting programs.

A trial court's support order will not be disturbed on appeal unless the complaining party shows that the order constituted a clear abuse of the court's discretion. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). A court abuses its discretion when it acts in an arbitrary or unreasonable manner or without reference to guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). The fact that a trial court may decide a matter

---

[1] *See* Order, *Micklethwait v. Micklethwait*, No. 03-06-00500-CV (Tex. App.—Austin Dec. 20, 2006), *available at* http://www.3rdcoa.courts.state.tx.us/opinions/HTMLOpinion.asp?Opinion ID=15499.

within its discretionary authority differently than an appellate court does not demonstrate an abuse of discretion, and we may not substitute our judgment for that of the trial court. *Id*.; *see also Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002).

To determine whether an abuse of discretion occurred, we engage in a two-pronged inquiry: whether the trial court had sufficient information upon which to exercise its discretion and whether the trial court erred in its application of discretion. *Zeifman v. Michels*, 212 S.W.3d 582, 588 (Tex. App.—Austin 2006, pet. denied). The traditional sufficiency review comes into play with regard to the first question; we then proceed to determine whether the trial court made a reasonable decision based on the evidence. *Id*.

The best interest of the child is the primary consideration in determining questions of child support. Tex. Fam. Code Ann. § 156.402(b) (West 2002); *Hollifield v. Hollifield*, 925 S.W.2d 153, 155 (Tex. App.—Austin 1996, no writ). For purposes of our analysis, "net resources" include all wages and salary income, self-employment income, and all other income actually being received. *See* Tex. Fam. Code Ann. § 154.062(b) (West 2002). The court may order support above or below the guideline amount if the evidence rebuts the presumption that application of the guidelines is in the best interest of the child and justifies a variance from the guidelines. *Id*. § 154.123(a) (West 2002).

Based upon the evidence presented, the trial court found that the application of the percentage guidelines in this case would be unjust or inappropriate; that requiring Marina to pay child support to Jonathan would be unjust or inappropriate; that Marina has no income or resources available; that Jonathan's monthly net resources were $1,736.97; and the amount of child support

payments computed under the percentage guidelines in section 154.125 of the family code was $347.39.[2] In light of these findings, the trial court ordered Jonathan to pay child support in the amount of $848 per month, which was 49% of his net resources. The trial court found that even though this allocation varied from the percentage guidelines in section 154.125, it was justified because it was in the best interest of the child; Marina is unemployed and unable to speak English and her employment opportunities are limited by her language skills; Jonathan has a greater ability to contribute to the child's support; Marina has custody of another child for whom she received no child support; Marina will incur expenses for the alcohol program she is required to attend; and Marina has immigration status concerns that may adversely affect her ability to live and work in the United States.

Although Jonathan's income is limited, the court found that Marina has no income and her employment opportunities are limited. Due to her limited language skills, Marina had worked as a housekeeper. It is not clear from the testimony that Marina will be able to provide adequately for her children after the divorce and when she is permitted visitation with the child at issue in this divorce. Jonathan's parents, who are divorced, testified to substantial contributions they had made to both Jonathan and Marina. Mrs. Micklethwait, Jonathan's mother, returned to Texas from Oregon to assist Jonathan and his family; after she left Jonathan, Marina resided with Mr. Micklethwait in New Braunfels, and he assisted her with medical expenses, food, transportation, and living expenses. Based on the record before this Court, we find that the trial court had sufficient

---

[2] Section 154.125 specifies the presumptive schedule to be followed if the obligor's monthly net resources are $6,000 or less, as they are here. *See* Tex. Fam. Code Ann. § 154.125 (West 2002).

evidence upon which to exercise its discretion. Based on the testimony in a difficult case, we find the trial court's decision does not demonstrate an abuse of discretion. We overrule Jonathan's first issue.

*Travel*

In his second and third issues, Jonathan complains that the trial court failed (i) to enter restrictions on Marina driving a vehicle with the child in it because of her abuse of alcohol and (ii) to restrict international travel of the child.

With respect to the use-of-alcohol issue, Jonathan testified that, after the birth of their child, Marina abused alcohol. On one occasion, he found her passed out and, on other occasions, he suspected use and testified that he believed she concealed her use of alcohol. Jonathan's father testified that he believed that Marina had used alcohol. A friend of Marina's testified that Marina was an excellent mother and that she had never seen Marina use alcohol. The employer of another friend testified that Marina had visited his house many times to visit her friend, that he had served alcohol, but he had never seen Marina take a drink. Marina also testified that she did not use alcohol. Despite her denials and an evaluation by county health authorities that demonstrated Marina had no problems with alcohol, the trial court ordered that she undergo an intensive alcohol treatment program.

In this case, there was conflicting evidence regarding Marina's use of alcohol. Jonathan sought to show that she abused alcohol; Marina denied its use or abuse. Based upon its evaluation of the conflicting testimony, the trial court struck an appropriate balance by ordering Marina to undergo alcohol treatment and parenting programs. In any event, at trial Jonathan did not

6

seek to prohibit Marina from driving with the child, and he may not raise this issue for the first time on appeal. Tex. R. App. P. 33.1; *see also In re B.L.D.*, 113 S.W.3d 340, 349 (Tex. 2003) (failure to raise complaint at trial waives review of that complaint on appeal).

In his third issue, Jonathan urges that, despite findings on the risk of international abduction of the child by Marina, the trial court failed to prohibit international travel of the child or specify any other limitations on travel except for standard notice provisions. The family code provides that if the court finds credible evidence of a risk of abduction of the child by a parent, the court may impose abduction prevention measures. *See* Tex. Fam. Code Ann. § 153.503 (West Supp. 2006). For the court to find a credible risk of abduction, section 153.502 of the family code provides that the court may consider various factors, including evidence that the parent:

(1) has taken, enticed away, kept, withheld, or concealed a child in violation of another person's right of possession of or access to the child, unless the parent presents evidence that the parent believed in good faith that the parent's conduct was necessary to avoid imminent harm to the child;

(2) has previously threatened to take, entice away, keep, withhold, or conceal a child in violation of another person's right of possession of or access to the child;

(3) lacks financial reason to stay in the United States, including evidence that the parent is financially independent, is able to work outside of the United States, or is unemployed;

(4) has recently engaged in planning activities that could facilitate the removal of the child from the United States by the parent, including:

 (A) quitting a job;

 (B) selling a primary residence;

 (C) terminating a lease;

7

(D)     closing bank accounts;

(E)     liquidating other assets;

(F)     hiding or destroying documents;

(G)     applying for a passport or visa for the parent or the child; or

(H)     applying to obtain the child's birth certificate or school or medical records.

*Id.* § 153.502(a) (West Supp. 2006).  The court may also consider evidence of a parent's strong ties to another country or lack of ties to the United States.  *Id.* § 153.502(b).  If the court finds, based on credible evidence, that a risk of abduction exists, it may fashion an appropriate order, including ordering passport and travel controls.  *Id.* § 153.503.

The court made the following findings of fact with regard to the risk of international abduction:  the child's residence is in the United States; credible evidence was presented that there is a potential risk of international abduction of the child by Marina; Marina has strong ties to Russia and lacks strong ties to the United States; Marina is undergoing a change in status with the United States Immigration and Naturalization Service that may adversely affect Marina's ability to legally remain in the United States; Jonathan has limited financial resources to pursue the recovery and return of a child abducted to Russia; Marina is unemployed and lacks financial reasons to stay in the United States; Marina has previously threatened to take, entice away, keep, withhold, or conceal the child in violation of Jonathan's right of possession or access to the child; and Marina traveled with the child to Russia during the months of July, August, and September 2005 and returned to the United States on September 28, 2005, with the child as scheduled.

8

In open court, after ordering Marina not to remove the child from the United States except upon written agreement with Jonathan or after the child has reached the age of six years, the court stated:

> I am very sympathetic to the predicament that Ms. Micklethwait is in. I believe that it must be extraordinarily hard to move to a new country, to find yourself in an unhappy marriage, to have two young children, to be worried about money and worried about your ability to work.
>
> However, these were your choices. You weren't brought here. You chose to come here. And it's not true that you can't survive; you can. And I hope that you will not only survive, but thrive; and at the same time, be a better mother to [the child] so that he can have a more normal relationship sharing his time between the two of you.

In its order, the court fashioned a directive allowing either parent with the consent of the other parent to apply for a passport for the child and to have the right to maintain passports; requiring either parent to deliver to the other parent the child's passport upon notice of intent by the parent to have the child travel outside the United States during the period of possession of the parent; allowing extended summer possession by Marina; and requiring various other types of notice as with other domestic travel requirements.

The record supports the balance struck by the trial court in its order. Both parents' testimony revealed a contentious relationship with each other that at times focused on the child. But the evidence demonstrated that, although Jonathan claimed Marina threatened to take the child to Russia and not return, in the only instance when she visited her family with the child in the summer of 2005, Jonathan encouraged her, he bought the tickets, and she returned as scheduled. Two days later, Jonathan filed for divorce. The trial court did not abuse its discretion in refusing to impose

limitations on international travel apart from the notice provisions. We overrule Jonathan's second and third issues.

***Separate Property***

Jonathan also challenges the trial court's award of a portion of Jonathan's retirement account, claiming that the portion he had the right to receive as of the date of his marriage was his separate property and that the community property portion should have been determined based upon his participation in the program from the date of marriage until the date of divorce. Thus, he argues, the portion attributable to the first nineteen months prior to the marriage should be considered his separate property.

A trial court has no discretion to divest title to separate property and award that property to the other spouse in a divorce. *Cameron v. Cameron*, 641 S.W.2d 210, 219-20 (Tex. 1982). However, under the family code, a presumption exists that property possessed by either spouse during or on the dissolution of the marriage is community property. Tex. Fam. Code Ann. § 3.003 (West 2006). A spouse seeking to overcome this presumption must prove the separate character of the disputed property by clear and convincing evidence. *Id*. The spouse must trace and clearly identify the property claimed as separate property. *In re Estate of Hanau v. Hanau*, 730 S.W.2d 663, 667 (Tex. 1987). Separate property retains its character through a series of exchanges so long as the spouse asserting separate ownership overcomes the community property presumption by tracing the assets on hand during the marriage back to property that, because of its time and manner of acquisition, is separate in character. *Cockerham v. Cockerham*, 527 S.W.2d 162, 167 (Tex. 1975).

The trial court acts as fact finder in a bench trial and is the sole judge of the credibility of witnesses. *Murff v. Murff*, 615 S.W.2d 696, 700 (Tex. 1981). As fact finder, the trial court may consider all the facts and circumstances surrounding each witness and accept or reject all or part of that testimony; an appellate court may not substitute its judgment for the trial court's assessment of testimony in a bench trial. *See In re W.E.R.*, 669 S.W.2d 716, 716-17 (Tex. 1984); *Hailey v. Hailey*, 176 S.W.3d 374, 383 (Tex. App.—Houston [1st Dist.] 2004, no pet.).

Jonathan testified that he was employed as an assistant manager at a Mr. Gatti's Restaurant. At the time of trial, he had been working at the restaurant for four years and had a 401(K) plan with $10,800 in it. From April 2002, when he started working at Mr. Gatti's, until March 2004, when he married, any contribution would be considered separate property. But when asked when he began contributing to the retirement plan, he responded, "I would say maybe four or five months after starting with them." Our review of the record does not show any other evidence concerning the retirement plan, and Jonathan does not cite us to any relevant record references.

The court expressed doubt that Jonathan had carried his burden to establish his separate property interest in the plan. The court then concluded that "given the disparity in their resources and [that] she is flat destitute," it would be fair and equitable to consider the retirement account as community property and split equally between the parties. Jonathan did not object at trial to this allocation.

Based upon the evidence before it, the trial court concluded that Jonathan failed to carry his burden to establish that any portion of the retirement account was separate property. Given the paucity of testimony and Jonathan's failure to present clear and convincing evidence showing

11

any portion of the retirement account to be his separate property, the trial court's allocation is supported by the evidence. We find no error or abuse of discretion in the trial court's award of the retirement account.

## CONCLUSION

Based on the record before us, Jonathan has not demonstrated that the trial court erred or abused its discretion in awarding child support, dividing the marital estate, or failing to further restrict Marina in driving or international travel with the child. Having overruled Jonathan's four issues, we affirm the judgment of the trial court.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed: June 27, 2007

12